Ira M. Ingram *v.* John J. Robbins.

Judgment, December 14, 1859, $2,560.66. · No. 1.

Ira M. Ingram *v.* John J. Robbins.

Judgment, December 14, 1859, $1,117.35. No. 2.

John H. Mathews and Cornelius S. Mitchell *v.* John J. Robbins.

Judgment, December 16, 1859, $1,020.73. No. 3.

The legislature, in requiring the statement of facts accompanying a judgment by confession to be properly verified by the oath of the party, intended that in so far as it related to things within his own knowledge, he should affirm it to be true.

Where the party only swears that he "believes the above statement of confession is true," the affidavit is insufficient, and the judgment, if entered thereupon, will be vacated.

To allow parties to adopt a form of words less binding upon their conscience than a direct affirmation, would weaken the safeguards which the law has provided, and therefore will not be allowed.

Mathews and Mitchell, the plaintiffs in the last judgment (No. 3), made a motion to vacate and set aside the other two judgments and the executions thereon, on the ground that they were fraudulent and void.

The court, at Special Term, made an order, dated February 1, 1860, denying the motion as to the second judgment (No. 2), and reducing the amount of the first judgment to $1,960, and declaring it to be a valid lien for that amount.

On appeal to the General Term, this order was affirmed with costs, and opinion delivered by Justice Peckham.

The judgments in favor of Ingram, who is a brother-in-law of Robbins, were entered on the 14th December, two days before the judgment in favor of Mathews.

The Mathews cause was on the calendar for trial, and was, on 7th December, 1859, ordered to be tried on the 16th December, 1859, on which day an inquest was taken. In the

meantime, and on the 14th December, Robbins confessed the two judgments to Ingram.

Judgment No. 1 was authorized to be entered for $2,560.66, which it was claimed was the amount of ten notes alleged to have been indorsed by Ingram for Robbins. The amounts of two of these notes (Nos. 7, 9) were omitted in the statement. The other notes amounted to $1,960, of which only $875 were due at the time of the judgment.

The objections to this judgment were: 1. That the statement was not properly verified. 2. That the notes specified amounted only to $1,960. 3. That it did not appear that the notes, or if any, which of them, have been disposed of by Robbins, so as to render Ingram liable on them. 4. That five of the notes had become due before the judgment, and it did not appear that Ingram's liability as indorser had been fixed.

Judgment No. 2 was recovered for the amount of three notes made by Robbins to Ingram, for certain considerations expressed.

The only objection to the judgment, is the want of a proper verification. Several of the objections originally made to these judgments have been disposed of by intermediate decisions of this court.

The objection to the verification of the statements on these judgments seems to have met the favorable consideration of the General Term; which, however, overruled it, in deference to the decision in the fourth district, in 21 Barb., 91, in regard to which Judge PECKHAM, in his opinion, says: "Though differing with the learned court in the fourth district radically, I yield to the authority of those decisions."

*John E. Burrill,* for Mathews and Mitchell.

I. The affidavit of Robbins, that he believed the statement to be true, was not a sufficient verification, under the 383d section of the Code, which is in these words: "A statement in writing must be made, signed by the defendant and verified by his oath." (Code, § 38⑥; Op. PECKHAM, J., case, 26.)

1. "*To verify*" is stated to be "To prove to be true."

When the verification is by writing, it must be by affidavit, and "to make affidavit of a thing is to testify to it upon oath." (Burrill Law Dic., title "Verification and Affidavit;" 3 Bl. Com., 304.)

2. It cannot be said that a thing is proved to be true by a statement of the belief of a witness in regard to it.

3. If it be conceded that an indictment for perjury would lie on an affidavit made on belief which is not certain, still the evidence to justify conviction would be far different from that which would be required were the statements made positively and upon knowledge.

4. The object of the Code, in requiring these statements to be verified, was, as far as possible, to prevent the recovery of fraudulent judgments, and such verification was required to be made by the debtor, for the reason that it was fair to suppose that he had better knowledge than any one else in regard to the matter. (13 How. Pr., 21.)

5. Where the subject matter of the affidavit or deposition is peculiarly within the knowledge of the deponent, and is capable of personal or positive knowledge, the debtor ought to be compelled to testify positively in regard to its truth.

6. It was the intention of the codifiers that all affidavits of verification, except where limited and qualified, should be made on positive knowledge. (Code, § 157, verifications generally; § 158, verification of accounts; *Roberts* v. *Willard*, 1 Code R., 100, where Judge GRIDLEY held that an affidavit made "*on belief*," under § 208, was insufficient.)

7. It has been repeatedly held under the statutes relating to attachments, injunctions, arrest, and service of summons by publication, that the affidavit must be positive; in all cases where the matters are within the personal knowledge of the deponent, they must be stated positively; and that when a statement on belief is tolerated, as in cases where the intention of a party is in question, then it must be accompanied with affidavit of the facts.

II. The statement on which judgment No. 2 was entered did not, on its face, purport to establish an indebtedness for the amount for which judgment was entered, and the judg-

ment was void, and the court had no power to declare it to be a valid lien for the sum of $1,960, to which it was reduced by the order appealed from. (*Hopkins* v. *Nelson*, 24 N. Y., 518; *McDowell* v. *Daniels*, 38 Barb., 143; *Durham* v. *Waterman*, 17 N. Y., 9; *Van Beck* v. *Sherman*, 13 How. Pr., 472; *Winnebrenner* v. *Edgerton*, 30 Barb., 185; *Clements* v. *Gerard*, id., 325.)

III. The plaintiff was not authorized to include in judgment No. 2 the four notes (2, 6, 8, 9) mentioned in the statement, which were past due at the time of the judgment.

1. There was no proof that they were then held by third parties, or were not in the possession of the defendant.

2. It was not shown that the plaintiff had been charged as indorser thereon.

3. In point of fact, the statement did not show that there was any liability of the plaintiff in regard thereto.

4. An action could not have been sustained by the plaintiff against Robbins, to recover that amount.

IV. Even if the judgment No. 2 was not wholly void for the reasons mentioned, still the plaintiff had no right to collect under it any more than was actually due, and the execution should have been set aside, or the amount reduced so as to cover only the amounts of the judgments, less the three notes, whose amounts were not specified, and those which were past due at the time of the entry of judgment thereunder, and on which the plaintiff's liability as indorser never attached or was discharged.

V. The validity of the judgment must be determined by the sufficiency of the statement on which it was entered, and could not be sustained by affidavits read in opposition to our motion.

If such affidavits were available to the plaintiff, it should be upon a motion made by him to correct or amend the judgments, in which case the opposing creditor would know what case he was called upon to meet, and have the opportunity of procuring evidence to do so.

VI. The judgment should be vacated, as against the plaintiff, on the third judgment, and the orders modified accordingly.

If not void, and the court consider that the Special Term had power to amend them by reducing the amount, then the second judgment should be further reduced by striking out the notes which were past due at the time of the confession.

*Martin I. Townsend,* for the respondent.

I. These confessions of judgment were sufficiently verified. The provision of the 383d section of the Code as to verification, is in the words following: "*And verified by his oath.*" Anything which the law makes a verification, will obviously meet the requirements of this statute. The learned judge who wrote an opinion in this matter at the General Term, Justice PECKHAM, held with us on this point only upon the ground of authority, yielding to the authority of *Delaware* v. *Ensign* (21 Barb., 85, 91), but stating his views to be that the judgments were not in fact verified, resting his opinion upon the difficulty, if not the impossibility, of convicting of perjury, in case the statement verified should not be true. We submit that a man is never convicted, and never can be convicted of perjury, simply because a statement made is false; the statement must be corruptly false. In a word, no man can be convicted of perjury in making a statement which he believes to be true, whether such statement be unqualified, or whether it be stated in the form of belief merely. And a conviction for perjury must follow in any case where it is sufficiently proved that a party has stated under oath that which he did not believe to be true, whether the statement be in form a statement upon belief, or an unqualified allegation of the truth of the thing averred. (Archbold's Criminal Pleadings, 428; *Rex* v. *Pedley*, 1 Leach, 327, per Lord MANSFIELD.) By 2 R. S., p. 681, § 1, perjury must be "*willful and corrupt.*" Indeed, so thoroughly is this principle understood, that in the actual administration of the oath of verification to written instruments, whatever be the written form of verification, the person administering the oath swears the affiant that the statement verified "*is true, to the best of the affiant's know-*

*ledge and belief."* Language used in statutes, unless some legal reason exists to the contrary, will be understood to have the same meaning as when used in common life. If we look into the Code of Procedure itself to find what is meant by the word " verify " in other sections, we shall find that in the 157th section, if a party swears that he believes a pleading to be true in the proper case, such statement is called a verification, and even in those cases, when a pleading is sworn to by an agent or attorney, upon information and belief, that statement is called in the statute itself a *" verification."* In *Hames* v. *Tripp* (4 Abb., 232), where all the allegations in a pleading were made on information and belief, a verification, in which it was stated that the affiant *" believes it to be true, all the allegations therein being made on information and belief,"* was held to be sufficient. So we see that not only does the 157th section of the Code interpret the word " verify," but that judicial construction of that section sanctions the freest rendering of that section. But we have a still further illustration of the meaning which the legislature attached to the word " verification " in the 158th section of the Code. The bill of particulars may be *" verified "* — *" to the effect that he believes it to be true."*

But the General Term of the 4th district, in *Delaware* v. *Ensign* (21 Barb., 91), four years before these verifications were drawn, sanctioned the very form used in these cases. That decision was published in 1856, and has been, it is believed, universally acquiesced in up to the present time. This decision was before the attorney and the party, when the verifications in question were drawn, and was followed; and it is submitted, not only that the decision was correctly made at the time, but that after ten years' acquiescence in the doctrine, great mischief would result from its reversal, as such reversal must invalidate thousands of judgments entered up in compliance with that decision.

II. The judgment in which the amount of two of the notes mentioned is omitted, and the statement of confession for which is found, was properly declared valid for $1,960, and affirmed. The provision of the Revised Statutes in

regard to amendments, found in 2 R. S., 424, 425, §§ 7, 8, are not repealed, but still in full force, although the whole title, of which these sections were a part, was omitted from the 4th edition of the statutes, as superseded by the Code, but not as repealed. (*Brown* v. *Babcock*, 1 Code R., 66.)   The provisions of this title may well be considered as superseded by the Code in most cases, inasmuch as the power of amendment furnished by the Code, is larger and more liberal than that furnished by the statute in question; but by certain sections of the Code, its provisions in general are limited to actions pending, and for that reason some have supposed that the court had no power to amend a judgment by confession; but a reference to the sections of the Revised Statutes quoted will show that such an opinion is erroneous, and where the material exists in the judgment roll, out of which to make the judgment what it should be, the court have the same power to amend that they would have had before the Code, in a judgment rendered in a suit regularly instituted.

2. The amendment of this judgment, if it be considered that the court amended the judgment, or the declaration that a judgment for more than $2,500 should be valid as against creditors but for $1,900, countervailed no rights acquired by other creditors, as the order reduced the apparent amount of the judgment.

3. The power of making such orders in relation to judgments upon confession, is now fully established, and has been repeatedly exercised.   In *Neele* v. *Berryhill* (4 How., 16), two statements for confession of judgments were left with the county clerk for the purpose of having judgments entered upon them.   The clerk entered the judgment in the docket, but did not write a statement of the judgments on the confessions.   On a subsequent day, another statement for the purpose of a judgment by confession, in favor of another plaintiff, but against the same defendant, was filed in the same office; the judgment on this was regularly entered.   On a day still subsequent, the attorney for the plaintiffs in the first two judgments consents to have

the judgments entered up as of that date. On motion, it was ordered that the last judgments be vacated, and the judgments perfected as of the first date. The same doctrine was affirmed in *Daly* v. *Mathews* (20 How., 267).

In *Mann* v. *Brooks* (7 How. Pr., 449), the statement of confession was amended on motion to the court, without notice to the subsequent judgment creditor, and CADY, J., held the judgment so amended good as against the subsequent judgment creditor, and in 8 Howard, 40, the General Term unanimously affirmed Judge CADY's decision. In *Hoppuck* v. *Donaldson* (12 How., 141), the judgment was entered for two items, $521.60, and $500. The court, Judge BROWN presiding, decided that the judgment should be held good, and have priority over subsequent judgments for the $500, the judgments being held ineffectual for the $521.60, on account of the insufficiency of the statement; it appearing that the claim was fair.

In *McKee* v. *Lyon* (10 Abb., 392), a judgment was held, by Judge SCRUGHAM, good for that part in regard to which the statement was sufficient, and ineffectual for the remainder.

So that the action of the court in this case is sustained by abundant authority, and we find no authority or dictum conflicting with the views which the court took in this case.

DENIO, Ch. J. The most important practical question upon this appeal is whether the statements upon which the first two judgments were entered were properly verified. An affidavit was annexed to each, in which it is said that the deponent "believes the above statement of confession is true." The statute requires the statements or confessions to be verified by the oath of the defendant.

Where, in the course of legal proceedings, the oath of a party is required, the intention is to appeal to his conscience and to his religious sense, and also to the dread of the temporal punishment which the law has denounced against the crime of perjury. Where the matter to which the oath relates is within the personal knowledge of the party, the usual form is a direct and positive affirmation that the state-

ment is true.  Where the matter to be proved concerns the acts of others, transacted when he was not present, and where his knowledge consists in the information which he has received respecting it, the form adopted is to state the information, and add that the deponent believes it to be true. All the material facts contained in these statements are of acts in which the deponent, the defendant Robbins, was the principal actor.  In one of them they were notes made by himself for a consideration passing between him and the plaintiff, and in the other they were accommodation indorsements of notes made by himself, which notes he had procured to be discounted or had negotiated to banks and to his creditors. The statements related to his own act and deed, and not at all to matters of which his knowledge was derived from information.  The oath which he made was *ex parte*.  The proceeding did not contemplate the presence of any person having a conflicting interest, who could inquire into the grounds of the defendant's belief.  In requiring that he should verify the statement, the legislature intended that in so far as it related to things within his own knowledge, he should affirm it to be true.  A statement that he believes it, is something considerably short of this.  How far short it would be, in a given case, would depend upon the conscientiousness, and to some extent upon the intelligence of the person using the term.  No one can fail to feel that when that term is used, the party commits himself less conclusively to the principal fact.  It is a qualification of the direct affirmation of the existence of the fact.  Besides, the word is inappropriate when used in relation to a fact which the party either knows or does not know.  It relates to faith, and expresses the evidence we have of things not seen, but nevertheless credited from what we have heard, or from other collateral facts which we do know, and which argumentatively lead to the principal thing.

To hold this oath to be a compliance with the statute, would, in my opinion, be very hazardous.  Many of our rights and interests are liable to be affected by *ex parte* affidavits.  The readiness with which they are made by

interested parties is proverbial. If you allow such parties to adopt a form of words less binding upon their conscience than a direct affirmation would be, we weaken to that extent the safeguards which the law has provided.

It is said that a party may be convicted of perjury in swearing to his belief of that which he knows to be untrue. It appears that this is so ; but the evidence in such a case, and in one where a party swears directly, is quite different. In the former the prosecution, in addition to negativing the principal fact, would be obliged to establish the corrupt motive by affirmative proof. In the other, if the main fact were disproved by sufficient evidence, it would rest upon the accused to show that the swearing was not corrupt, but the result of mistake, or the like. The *onus* should rest on him, and an affidavit which will invert the order of proof ought not to be held sufficient. Such an oath is not a responsible one.

It follows that the statements in these cases were not verified according to law.

The plaintiff in the two judgments, in opposing the motion to set them aside, showed satisfactorily that the error arose from the inadvertence of the attorney employed to enter up the judgments. The plaintiff produced a list of the notes which he had given to and indorsed for the defendant, and the latter attended for the purpose of making oath in legal form to the statements, and he signed and swore to the affidavit which was prepared for him, supposing it to be sufficient in form and substance. Both the plaintiff and defendant, in opposing the motion, made oath to the existence and validity of the demands for which the judgments were confessed, and to the good faith of the proceeding. The Supreme Court, I think, should have allowed the plaintiff, on payment of the costs of the motion, to amend the statements by placing on file statements properly verified, and in default of doing so the court should have granted the motion. (*Mitchell* v. *Van Buren*, 27 N. Y., 300.)

The facts set out in the statement, in which the judgment for $1,117.35 was entered, are quite sufficient.

The other judgment can be sustained, if at all, only as one given to secure a contingent liability. It is not sufficient even in that aspect, and I am unable to uphold it. Some of the notes which the plaintiff had indorsed for the accommodation of the defendant were overdue, and others of them were running to maturity. As to those where the day of payment had passed, there is no allegation that the plaintiff had been charged as indorser. There is, it is true, an allegation that the defendant is indebted to the plaintiff for the amount of all the notes, and the judgment is confessed for that amount. But there was, strictly speaking, no indebtedness for either of the notes, and no pretense for it as to those which had not matured, though there was a proper occasion for confessing judgment for them as for a contingent liability. But it should be shown that those overdue had been protested. The plaintiff's affidavit read on opposing the motion, proves that these notes had been regularly protested, and that he had been charged. As it was wholly the fault of the attorney that a statement of that fact was omitted in the written confession, I think we should likewise allow an amendment in that respect. The statement that the indorsed notes had been negotiated by the defendant was sufficient.

The Supreme Court was correct in reducing the amount of the judgment by deducting the aggregate of the notes whose amount was not stated, sustaining it for the residue so far as concerned that omission, notwithstanding the error.

The order appealed from must be reversed, and the record remitted, with a direction to the Supreme Court to allow the plaintiff to amend the statements in the particulars which have been mentioned; and that if such amendment be made, and the costs at General and Special Term paid within a time to be fixed by the court, then the motion to set aside the judgments is to be denied. If such amendment and payment shall not be made within the time fixed, the judgments are to be set aside, with costs.

All the judges concurring,

Judgment reversed.