THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DANIEL H. PRIOR, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MICHAEL T. SMITH, Appellant. (2 cases)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DANIEL WILLIGAN and JOHN WILLIGAN, Appellants.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES S. COLLINS, Appellant.

Argued April 18, 1945; decided July 19, 1945.

*Robert E. Whalen, Daniel H. Prior* and *George Myers* for Michael T. Smith, Daniel Willigan and John Willigan, appellants.

*Robert E. Whalen, Daniel H. Prior* in person, *George Myers* and *Eugene G. Hess* for Daniel H. Prior, appellant.

*Robert E. Whalen, Daniel H. Prior, George Myers* and *Reuben H. Kohn* for James S. Collins, appellant. I. The process whereby the grand jury which returned the indictment against these defendants was impaneled deprived defendants of the guaranties of due process and equal protection vouchsafed to them by both Federal and State Constitutions. As finally selected, the Grand Jury which indicted the defendants was not chosen by lot but was nothing else than a hand-picked body. (*United States* v. *Eagan,* 30 F. 608; *The People* v. *Hooghkerk,* 96 N. Y. 149; *Balbo* v. *The People,* 80 N. Y. 484; *Strauder* v. *West Virginia,* 100 U. S. 303; *Pierre* v. *Louisiana,* 306 U. S. 354; *Hildreth* v. *City of Troy,* 101 N. Y. 234; *People* v. *McQuade,* 110 N. Y. 284; *Smith* v. *Texas,* 311 U. S. 128; *Hill* v. *Texas,* 316 U. S. 400.) II. A grand jury chosen through the artifice of the prosecution is not lawfully constituted. (*Pierre* v. *Louisiana,* 306 U. S. 354; *Aviret* v. *State,* 76 Md. 510; *State* v. *Symonds,* 36 Me. 128; *McQuillen* v. *State,* 8 Smedes & Marshall [Miss.] 587; *State* v. *Williams,* 5 Port. [Ala.], 130; *State* v. *Smith,* 145 La. 1091; *State* v. *Brooks,* 9 Ala. 9; *O'Byrnes* v. *State,* 51 Ala. 25; *Finley* v. *State,* 61 Ala. 201.) III. The Grand Jury represented no true cross-section of the community. (*People* v. *Naughton,* 7 Abb. Pr. [N. S.] 421; *Smith* v. *Texas,* 311 U. S. 128; *Keitler* v. *State,* 4 Iowa 291; *Clare* v. *State,* 30 Md. 164; *Wilburn* v. *State,* 21 Ark. 198; *State* v. *Cantrell,* 21 Ark. 127; *Dutell* v. *State,* 4 Greene

[Iowa] 125; *Fitzgerald* v. *State*, 4 Wis. 395; *Leathers* v. *State*, 26 Miss. 73; *Hill* v. *Texas*, 316 U. S. 400; *Dunn* v. *United States*, 238 F. 508; *People* v. *Dimick*, 107 N. Y. 13.)

*Nathaniel L. Goldstein, Attorney-General* (*Stanley H. Fuld, George P. Monaghan, Harris B. Steinberg* and *Herbert Stern* of counsel), for respondent. I. The Grand Jury was properly selected; the court, vested with a discretion in excusing and excluding talesmen, properly exercised that discretion. (*People* v. *McGonegal*, 136 N. Y. 62; *Butler* v. *G. F., S. H. & F. E. S. R. R. Co.*, 121 N. Y. 113; *People* v. *McQuade*, 110 N. Y. 284; *State* v. *Guthrie*, 185 Wash. 464; *People* v. *Luckman*, 164 Misc. 230; *State* v. *Wescott*, 194 Wis. 410; *People* v. *Decker*, 157 N. Y. 186; *United States* v. *Jones*, 69 F. 973; *Territory* v. *Barth*, 2 Ariz. 319; *State* v. *Codington*, 80 N. J. L. 496.) II. Even if talesmen had been erroneously excused or excluded from service on the grand jury, there would have been no basis for dismissing the indictments. The asserted impropriety impaired no constitutional right of the defendants. (*People* v. *Borgstrom*, 178 N. Y. 254; *People* v. *Glen*, 173 N. Y. 395; *The People* v. *Petrea*, 92 N. Y. 128; *Howard* v. *Kentucky*, 200 U. S. 164; *Brown* v. *New Jersey*, 175 U. S. 172; *Hayes* v. *Missouri*, 120 U. S. 68; *United States* v. *Ballard*, 35 F. Supp. 105; *People* v. *Shannon*, 203 Cal. 139; *People* v. *Schmidt*, 168 N. Y. 568; *Dolan* v. *People*, 64 N. Y. 485; *Ferris* v. *The People*, 35 N. Y. 125; *People* v. *Jewett*, 3 Wend. 314; *Hyde* v. *United States*, 225 U. S. 347; *Rawlins* v. *Georgia*, 201 U. S. 638; *United States* v. *Cornell*, 2 Mason 91; *Dolan* v. *People*, 64 N. Y. 485.) III. In any event, the defendants have not been prejudiced. (Code Crim. Pro., §§ 684, 542; *People* v. *Schmidt*, 168 N. Y. 568; *Dolan* v. *People*, 64 N. Y. 485; *Ferris* v. *The People*, 35 N. Y. 125; *Hyde* v. *United States*, 225 U. S. 347; *Morris* v. *United States*, 128 F. 2d 912; *United States* v. *Brookman*, 1 F. 2d 528; *Moffatt* v. *United States*, 232 F. 522; *State* v. *Keating*, 85 Md. 188; *Thompson* v. *Douglass*, 35 W. Va. 337; *State* v. *Wescott*, 194 Wis. 410.)

LEWIS, J. In these five criminal actions a single question is common to each appeal — Was the Grand Jury legally constituted which returned indictments against the appellants?

That question was answered in the negative at Special Term where an order issued dismissing each indictment. Upon appeal by the People to the Appellate Division the order in each instance was reversed and the indictment reinstated, one justice dissenting.

As we consider whether the process was legally conducted by which the members of the Grand Jury were selected, we look to the record to ascertain the scope of the inquiry in which they were authorized to act. From that source we learn that the Grand Jury was impaneled at an Extraordinary Special and Trial Term of the Supreme Court convened by the Governor to be held in the County of Albany on December 13, 1943. Although the Extraordinary Term was originally appointed to inquire into election frauds, a supplemental order by the Governor extended the inquiry to include crime and corruption of public officers in Albany County or any subdivision thereof, crimes affecting the administration of justice, the collection of public revenues and crimes committed by persons and corporations having business dealings with Albany County or its subdivisions. The record makes it clear that within the broad field of inquiry thus established were ramifications which might reasonably invite investigation of a wide variety of matters involving acts by individuals connected with local government and transactions had between public officials and business interests.

The appellants do not assert that the Grand Jury as finally impaneled included members who were legally disqualified. The attack is upon the method of selection with special reference to rulings by the Trial Justice on the *voir dire* examination by which prospective jurors were excluded from service.

The statutes require that a grand jury shall consist of not less than sixteen and not more than twenty-three persons who shall be " chosen by lot " from " citizens of the county." (Code of Crim. Pro., §§ 223, 224.) The availability of any citizen for such jury service may be challenged if it appears " that a state of mind exists on his part in reference to the case or to either party, which satisfies the court, in the exercise of sound discretion that he cannot act impartially and without prejudice to the substantial rights of the party challenging." (Code of Crim. Pro., § 239, subd. [6].) The " state of mind "

to which the statute refers is " actual bias." (Code Crim. Pro., § 376, subd. [2].)

The record before us does not support the appellants' assertion that the grand jury was not " chosen by lot ". That statutory requirement (Code Crim. Pro., § 223) is satisfied if the grand jury ultimately selected is comprised of the first twenty-three persons drawn by chance whom the Trial Justice, in the exercise of a sound discretion, has determined to be impartial, free from actual bias in reference to the inquiry, and to possess the statutory qualifications. It is not denied that the names of the 288 persons, from whom the final panel of twenty-three was selected, were drawn by chance according to law from listed names in the grand jury box; nor is it denied that as each venireman was called for *voir dire* examination his name was drawn by chance from an appropriate ballot box.

As to rulings by the Trial Justice upon the *voir dire* examination we find no evidence that talesmen were excused as a result of a sustained, systematic effort by the court arbitrarily to exclude from the final panel persons of a particular classification — political or otherwise. Indeed, the suggestion that political affiliation exerted a decisive influence in the rejection of prospective grand jurors is disproved by the fact that of the twenty-three talesmen chosen to comprise the final panel nine were enrolled in the Democratic party, six in the Republican party and eight were not enrolled in any party. Nor do we think that either prejudice or arbitrary exclusion is proven by the circumstance that the number of grand jury members enrolled as Democrats is not mathematically in the same ratio as the percentage of that party's enrollment in the county of Albany.

When, as in the present case, the scope of inquiry by a grand jury is broad and may lead into official, business or political relationships involving numerous individuals, a Trial Justice, in the exercise of a " sound discretion " to determine the availability of a prospective juror, must of necessity consider many factors which might produce a " state of mind " which is prejudiced for or against the subject of inquiry. There are many instances — cited by the appellants as evidence of legal impropriety — when the Trial Justice rejected prospective jurors who, after admitting friendship or other relationship

with those whose conduct might come within range of the inquiry, stated under oath that they could serve impartially. We cannot say that in any one of those instances there was no plausible ground for the decision by the Trial Justice. In the circumstances with which he had to deal he was not required to accept a prospective juror's statement that he could act impartially. (*Balbo* v. *The People*, 80 N. Y. 484, 495.) Knowing, as we do, that the causes operating to produce bias are of a nature which it is impossible strictly or accurately to define, we cannot rule as matter of law that the Trial Justice erred in those instances. (See *Butler* v. *G. F., S. H. & F. E. R. R. Co.*, 121 N. Y. 112, 118; *People* v. *McGonegal*, 136 N. Y. 62, 71.)

Nor can we say that the appellants' rights were prejudiced when the Deputy Attorney-General representing the People was permitted, prior to the *voir dire* examination, to submit to each talesman a printed list containing the names of 330 individuals with whom any acquaintanceship by the talesmen would later be the subject of oral examination. From the scope of the inquiry upon which the Grand Jury was about to enter it was reasonably to be expected that the investigation would concern itself with governmental, political, business and personal relationships in which many individuals would be involved as witnesses or otherwise. The inspection by prospective jurors of such a list and their subsequent oral examination as to the nature of the acquaintanceship they had, if any, with the persons listed, was procedure reasonably calculated to shorten the *voir dire* examination and thus to facilitate the inquiry. That purpose, as the record indicates, was accomplished without prejudice to the rights of those who might be affected by any action to be taken by the grand jury.

We have already stated that we find in the record no evidence of a sustained, systematic effort by the Trial Justice arbitrarily to exclude persons of a particular classification from the final panel of grand jurors. Additionally, in connection with that conclusion, it may be said that if, during the twelve days while the *voir dire* examination was in progress, the Trial Justice erred in the exclusion of qualified talesmen from service, such exclusion affords no constitutional ground for the dismissal of the indictments against the appellants when, as in the present case, the grand jury as finally constituted consisted of jurors whose

qualifications are not questioned. The applicable rule was stated by Mr. Justice HOLMES writing in *Rawlins* v. *Georgia* (201 U. S. 638, at p. 640).: "Even when persons liable to jury duty under the state laws are excluded it is no ground for challenge to the array, if a sufficient number of unexceptionable persons are present. *People* v. *Jewett,* 3 Wend. 314." (*See,* also, *Howard* v. *Kentucky,* 200 U. S. 164, 173–174; *Brown* v. *New Jersey,* 175 U. S. 172, 175; *People* v. *Schmidt,* 168 N. Y. 568, 577–578; *Dolan* v. *People,* 64 N. Y. 485, 494.)

Our conclusion is that in the process by which the twenty-three citizens were selected who constituted the final panel there was no legal error which deprived that panel of the character of a grand jury in a constitutional sense.

The orders should be affirmed.

LEHMAN, Ch. J. (concurring). I agree with Judge LEWIS that no ruling made by the court in the impaneling of the grand jury furnishes sufficient ground for setting aside the indictments, though I am convinced that a number of rulings are erroneous as matter of law and that the methods used in questioning the talesmen and in objecting to their qualifications are not sanctioned by law and cannot be approved by the court. In reaching the conclusion that in spite of such errors the indictments may not be set aside on motion, I accept Judge DESMOND's definition of the scope of the court's power to set aside an indictment on the ground that it was found by a grand jury which was not impaneled in accordance with law, and I accept, too, Judge DESMOND's statement of the general principles which should guide the court in the exercise of that power. Though section 313 of the Code of Criminal Procedure enumerates the grounds upon which a defendant may move to set aside an indictment, and the motion to set aside the indictment in this case is not based on any of these grounds, yet the Legislature has not, by that section, deprived the courts of the State of their "inherent power and duty" to protect the citizen in his prerogatives guaranteed by the Constitution of the United States and the Constitution of the State of New York. (*People* v. *Glen,* 173 N. Y. 395.) Indeed, the Legislature could not deprive the courts of that power or compel the courts to sanction the violation of a right guaranteed by the Constitution. The Constitution of the State of New York guarantees that

no person will be held to answer for a felony " unless on indictment of a grand jury " (art. I, § 6), and though the Constitution does not define the mode of impaneling a jury and the Legislature has power to prescribe the method which shall be followed in procuring an impartial jury, neither the Legislature nor the court may sanction a method which does not give reasonable assurance that a jury so chosen will conform to the traditional concept of a " grand jury " and will be impartial. A jury otherwise selected is not a " grand jury " within the meaning of the Constitution and the court has both the power and the duty to set aside an indictment found by it. The court has, however, no inherent or statutory power to set aside an indictment found by a grand jury because there were errors in applying the statutory method of procurin  an impartial jury where the jury as impaneled conforms to the traditional concept of a grand jury and consists of a qualified group of men and women who represent a fair cross section of the impartial citizens of the county.

Here, as Judge DESMOND points out, the prosecutor was permitted to show each talesman a list of about 330 persons and to ask each talesman to mark on the list the names of the persons with whom the talesman was acquainted, but the attorney appearing for a person held to answer a charge for crime and entitled to challenge the talesmen was not permitted at any time to see the list. To permit the prosecutor to show a paper to the jury, to question talesmen upon it, and to base a challenge upon the answer of the talesman without allowing the other side to see the paper is, I think, patently unfair and even contrary to law. By such tactics an unscrupulous or overzealous prosecutor, unhindered by a complaisant judge, might succeed in " packing " a grand jury with men chosen by him and secure a grand jury obedient to the suggestions of the prosecutor and which might find an indictment based upon his suggestion rather than on the evidence.

All that I concede and I concede, too, that the court should not approve or sanction such a method of selecting the grand jury, but the question remains whether the extraordinary method used in examining and selecting talesmen casts reasonable doubt in this case upon the impartiality of the jury or upon its representative character. The test whether an indict-

ment may be set aside on the ground that the grand jury which returned it was not impaneled according to law is, as I have said, whether the grand jury is qualified and conforms to the traditional concept of a grand jury — not whether the court committed serious error in overruling objections to the manner in which the jurors were questioned by the prosecutor and in sustaining challenges by the prosecutor though based on insufficient cause.

Judge DESMOND has pointed out that in a substantial number of instances a challenge was sustained or a juror was excused at the suggestion of the prosecutor though the ground for the challenge or suggestion was insufficient. The record shows a consistent effort by the prosecutor, frankly stated, to obtain only jurors " who are not connected in any way with any official here in Albany or not tied up in any way in politics or with anyone in politics." It shows, too, I think, a consistent effort by the Justice presiding at the Extraordinary Term to obtain such a jury. Political activity or acquaintance with others who are active in the political life of the city, county or State, is certainly no legal ground for a challenge which the court would be bound to sustain and constitutes no legal disqualification for service as a grand juror. ·Political activity or acquaintance with those active in politics may, nonetheless, furnish ground for doubt whether a juror will judge impartially a charge which touches men with whom he associates more or less intimately; and where a grand jury is summoned for the investigation of " crimes committed by persons or corporations having business dealings with Albany County or its subdivisions " a grand jury from which the court has excluded all who are associated with " anyone in politics " may still be broadly representative of the people of the vicinage if the test is applied with honest intent to obtain an unbiased jury and if no person is excluded from the jury because of his political views or his enrollment in a political party or because he belongs to a particular social, religious or economic group.

Here, though the list of persons concerning whom the talesmen were questioned was not shown by the prosecutor to the attorney authorized to appear for the person " held to answer a charge for crime ", no talesman was challenged or excused until he had been questioned as to his acquaintance with par-

ticular persons and, though in some instances challenges were sustained because of such acquaintance where, so far as appears on this record, such acquaintance furnished no reasonable ground for a challenge, yet in spite of such errors twenty-three qualified jurors were procured and a substantial number of these jurors were enrolled in each of the two major political parties although not in the same ratio as the percentages of party enrollment in the county. Errors in rulings on the examination of talesmen there were; but I find no reason to believe that any ruling was made except for the honest purpose of procuring jurors whose judgment would not be swayed by friendship or personal interest. Though I agree that excess of zeal in seeking that end may have resulted in the exclusion of some unbiased jurors, in the absence of ground for a finding that any talesman was excluded except for cause which *in the opinion of the court* might create bias, the exclusion of persons not shown to be disqualified is not sufficient cause to set aside an indictment found by jurors who are qualified.

The order of the Appellate Division should be affirmed.

CONWAY, J. (concurring). I concur in the result reached by the Chief Judge. The question for our determination is whether, accepting as I do the facts stated by Judge DESMOND, the indictment against the defendants may be dismissed. When *Matter of Shea* v. *Swift* (292 N. Y. 116) was before us, the counsel who now moves for dismissal argued that unless the order of prohibition sought in that proceeding were granted, there was no remedy, constitutional or statutory, for the unlawful conduct of which complaint was then made. The argument then made was substantially that section 313 of the Code of Criminal Procedure enumerates the only grounds upon which a defendant may move to set aside an indictment, no matter how oppressive the result may appear to be; that the constitutional rights of Shea were not violated by the practices which he brought to the attention of the court, since the Constitution did not prescribe or regulate the method of selecting a grand jury; that the constitutional guarantee was only that Shea could not be held to answer for a capital or otherwise infamous crime unless on indictment of a grand jury (N. Y. Const., art. I, § 6); that the Constitution said no more about the method of

selection of a grand jury than it did about the method of exercise of the general jurisdiction of the Supreme Court (art. VI, § 1.)

It was upon acceptance of those arguments that two members of this court voted to grant the order of prohibition. The majority of this court, however, found that the trial court had jurisdiction of the defendant and of the subject matter of the inquiry and, therefore, held that whether or not the court was complying with the applicable statute, an order of prohibition could not properly be granted. Thus, this court did not reach the constitutional question now presented. However, if counsel was correct in his contention then that Shea was without remedy, save by an order of prohibition, there is no remedy now open to these defendants, regardless of whether or not the proceedings in the selection of the grand jurors were in contravention of the applicable statute.

We have heretofore considered the question presented. In *The People* v. *Petrea* (92 N. Y. 128) we held that although the grand jury was selected under an invalid statute, the defendant's constitutional rights were not violated. The contention there was " that the body of men which found the indictment in question, was not a grand jury, that the paper filed as an indictment was not an indictment, and that the defendant could not be held to answer thereto, or be put upon his trial thereon " (p. 142). We pointed out that the Constitution does not define the mode of selection of a grand jury, and that it was competent for the Legislature to enact such regulations and make such changes respecting the mode of selecting and procuring grand jurors as it might deem expedient, " not trenching, however, upon the essential feature of the system " (p. 143). We said substantially that, in *Stokes* v. *People of the State of N. Y.* (53 N. Y. 164, at p. 173) : " While the Constitution secures the right of trial by an impartial jury, the mode of procuring and impaneling such jury is regulated by law, either common or statutory, principally the latter, and it is within the power of the Legislature to make, from time to time, such changes in the law as it may deem expedient, taking care to preserve the right of trial by an impartial jury." In *People* v. *Borgstrom* (178 N. Y. 254, 257), there was presented to us an appeal from a conviction of the crime of murder in the first degree. The

defendant complained that by reason of the fact that he had been confined in prison while awaiting the action of the grand jury, he had been illegally deprived of an opportunity to challenge any one of the individual grand jurors who presented the indictment against him. We there said: " The motion made by defendant to dismiss the indictment on the grounds already stated is sufficiently answered by the fact that there is no provision of law permitting it. An indictment may be set aside on motion when it is not found, indorsed and presented as prescribed in the Code of Criminal Procedure; also, when a person has been improperly permitted to be present during the session of the grand jury while the charge embraced in the indictment was under consideration. (Code of Criminal Procedure, section 313.) The court can, undoubtedly, in addition to the grounds above stated, set aside an indictment where the constitutional rights of the defendant are invaded. (*People v. Glen,* 173 N. Y. 395.) No constitutional rights of the defendant are here involved, but they are clearly subject to legislative control." (See, also, *People* v. *Glen,* 173 N. Y. 395, 398.)

In other words, although by chapter II, section 223 of the Code of Criminal Procedure, it is provided that a grand jury must be chosen by lot, the breach of the provisions of that chapter is not made a ground for a dismissal of an indictment under section 313, and there is no constitutional question involved. (*The People* v. *Jewett,* 3 Wend. 314, 321, 322; *Rawlins* v. *Georgia,* 201 U. S. 638, 640; *United States* v. *Jones,* 69 F. 973, 975, 976; cf. rule 6 (b) (1) and (2) of Rules of Criminal Procedure for the District Courts of the United States, restating title 18 of U. S. Code, § 554a). The defendants, therefore, are without remedy.

The motion should be denied.

DESMOND, J. (dissenting). Appellants moved at Special Term to quash indictments returned against them by a grand jury empanelled for service at an Extraordinary Term of the Supreme Court in Albany County. Special Term granted the motion. The Appellate Division reversed the Special Term order and reinstated the indictments. Herein we deal with appellants' contention that the Grand Jury which found the

indictments was illegally chosen in that, contrary to customary and lawful procedures, a large number of qualified persons were arbitrarily excluded from service thereon.

In passing on the legality of the methods here employed in picking the grand jurors, we deal not with technicalities but with the integrity of a public judicial institution, probably the oldest in existence, and with the protection thereunder of important private rights. " Every member of the community is interested in preserving the grand jury system in its purity and usefulness " (*People* v. *Naughton,* 7 Abb. Prac. [N. S.] 421, 426). " Whether the grand jury system erects a bulwark of liberty or operates as an engine of oppression is not for us to decide. In ancient times it may have formed a shield against the tyranny of the crown. Today it may serve as a check upon popular passion. Always it has been susceptible of utilization to pervert justice " (*People ex rel. Battista* v. *Christian,* 249 N. Y. 314, 318, see *Ex Parte Bain,* 121 U. S. 1, 12). To thwart attempts at such utilization, this court has never hesitated, with or without statutory authorization, to employ its " inherent power and duty   *   *   *   to protect the citizen in his constitutional prerogatives and to prevent oppression or persecution " (*People* v. *Glen,* 173 N. Y. 395, 400; *People* v. *Nitzberg,* 289 N. Y. 523, 526). In providing for a grand jury the Constitution " had in mind the grand jury as known to the common law " and had no intention of changing its historic character (*Fitts* v. *Superior Court,* 6 Cal. 2d 230, 240, 241). It is of the substance of the traditional concept of a grand jury that it be chosen " from the body of the district " (*Ex Parte Bain, supra,* at p. 11). It must be " chosen by lot " (Code Crim. Pro., § 223). It is a part or arm of the court. (*People* v. *Naughton, supra;* see *Matter of Spector* v. *Allen,* 281 N. Y. 251, 260.) In view of its powers, it is of major importance that it be not ". packed ". A defendant held for a grand jury, or one later indicted by that grand jury, is deprived of his right to the protection of customary procedures and due processes, if by any method of selection or exclusion, a prosecuting attorney is given the privilege of installing in the grand jury room the talesman he wants and of disbarring those he does not want. Once a talesman is summoned into court for grand jury service, he cannot, unless excused by the court on its own motion or at the talesman's

request, be ousted, when his name is reached, except for one of the causes of challenge specifically set forth in section 239 of the Code of Criminal Procedure, and after a trial and determination of the challenge pursuant to sections 240 and 241. Ordinary, isolated errors made by the court in passing on such challenges are not fatal to the validity of the grand jury or its indictments — indeed there seems no way of reviewing such errors. But the persistent and intentional use by court or prosecutor of a method of challenging and eliminating jurors, completely at variance with all traditional and statutory methods and which results in the unwarranted and illegal exclusion of a large number of apparently qualified talesmen, affects the substantial rights of the citizens whose cases are to be heard by such a body, and offends against public justice. Such a situation should not be countenanced by this court. We should use our power to nullify it, whether or not the talesmen who were ultimately accepted were qualified to serve as grand jurors.

There is not, and never has been in this State, any such thing as a peremptory challenge to a grand juror. At common law there was, originally, no such thing as a challenge to the " polls ", or individual talesmen, for bias. The Legislature of this State provided for such challenges but until 1892, challenges were available only to " a person held to answer a charge for a crime ". By chapter 279 of the laws of that year, section 237 of the Code of Criminal Procedure took its present form and has since provided that " the district attorney in behalf of the people, and also a person held to answer a charge for crime, may challenge an individual grand juror." The causes for which challenges may be interposed are, however, by section 239, strictly limited. The first five of such grounds (minority, alienage, insanity, being the prosecutor or being a witness) are not here involved. It is on the cause of challenge numbered 6 in the statute that the court in its examination of talesmen for the Grand Jury which indicted the appellants, based its rulings: ". That a state of mind exists on his part in reference to the case or to either party, which satisfies the court, in the exercise of sound discretion that he cannot act impartially and without prejudice to the substantial rights of the party challenging." Regulating the manner of disposing of a challenge so asserted, the Code of Criminal Procedure (§§ 240, 241, 383, 384) requires

that there be an entry made of such a challenge on the minutes, that the trial of the challenge be governed by ordinary rules of evidence, and that the court allow or disallow the challenge, by a decision entered on the minutes. Let us examine, in the light of those rules, the actual occurrences during the selection of this Grand Jury.

First, the prosecutor handed to each citizen summoned for grand jury service a list containing 330 names, asking each to examine the list and to make a mark against the name of every person thereon with whom the prospective juror was " acquainted directly or indirectly ", " even if only slightly acquainted " or with whom the juror had " done business ", or " had any contact ". The individual talesmen were then examined. From the questions and answers we learn that some of the names on the long list were those of persons holding public offices or positions in Albany County, and that others were names of persons holding party positions in, or prominent or active in the affairs of, two of the political parties. Who the others were we cannot discover from this record, nor does the record disclose what connection any of the 330 listed persons had with the matters to be investigated by the Grand Jury, except that the prosecutor announced that evidence would be offered to the Grand Jury against some (unnamed) of those listed. Yet about forty challenges by the prosecutor were sustained, solely because those forty talesmen had answered that they knew in one way or another, some of those named on the list. In none of those instances was there any showing of any " state of mind in reference to the case or either party ". In none was there any evidence of " a state of mind " justifying an inference that the juror could not " act impartially and without prejudice to the substantial rights of the party challenging ". Of course, the court, trying the challenges, was not concluded by the jurors' own statements that they were free from bias, but evidence there had to be of a prejudiced and partial attitude toward " the case " or a " party ". In this record there simply is no such evidence as to the forty talesmen we refer to. No more was shown than that each of them knew some persons named on the list, knew their relatives, knew them casually or well, had met them socially or in business, or had participated with them in political or governmental affairs. We are unable to understand

how on such testimony there could be based an inference or finding of actual bias, such as is required by the statute for the allowance of a challenge. Indeed, one of the challenged jurors had the courage to protest in open court that the court's allowance of the challenge as to him was an unfair and unfounded imputation to him of bias and of lack of qualification to discharge one of his duties as a citizen. The Supreme Court has lately told us, concerning the selection of grand jurors, that "it is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community" (*Smith* v. *Texas*, 311 U. S. 128, 130.) "The fundamental purpose of the grand jury system is to obtain a group of men and women who represent a fair and impartial cross-section of the citizens of the county; each one with his or her own individual thoughts, experiences and reactions" (*In re Grand Jurors etc.*, 25 N. Y. Supp. 2d 154).

"The public good is in nothing more essentially interested, than in the protection of every individual's private rights, as modelled by the municipal law" (1 Blackstone's Com. 139). It is a public right, therefore, besides the right of the defendants here, that we are vindicating when we cast out indictments found by a grand jury chosen as this one was. When a grand jury, which is to sit in inquisition as an arm of the court, is being organized, no prosecutor has any right to pick and choose the persons who are to sit, or any right of liberum veto as against certain persons or groups in the community. As this prosecutor said in addressing the panel, his effort was " to get 23 men and women who are not connected in any way with any official agency here in Albany, or not tied up in any way in politics, or with anybody in politics ". Possibly, he had some good reason for such an endeavor. But, whatever his motive or intent was, the occasion was the impaneling of a grand jury, not the forming of a select committee, and " the fact that a juror belonged to one party, and was a strong partisan " could never be a ground for challenge (see opinions of BREWER, J., and THAYER, J., in *United States* v. *Eagan*, 30 F. 608, 609). The prosecutor and the court were here limited and controlled, as we are, not only by the Code provisions, stringent as they are, but by ancient concepts of an ancient institution devised and maintained to protect immemorial rights. If the procedures

here adopted be not condemned, then the next prosecutor may prepare any list he will of persons known or unknown to the court, inquire whether the talesmen know any of those persons, then demand the exclusion from the jury of all those who have even nodding acquaintance with any of the mysterious list. Such a test of the qualifications of grand jurors is unknown to the law. An overzealous prosecutor could get any grand jurors he wanted by asking those he did not want whether they knew certain other persons named by the prosecutor for the purpose. Indictments so procured are not based on the " law of the land ". That phrase means " that every citizen shall hold his life, liberty, property, and immunities, under the protection of the general rules which govern society " (*Ex Parte Wall*, 107 U. S. 265, 289). One of those rules, written into our State Constitution and statutes, is that grand jurors must be chosen by lot from the people of the vicinage, subject to challenge for lawful reasons only. Substantial departures from such rules invalidate a grand jury and the indictments it hands up. We agree that there is no showing here of such a systematic exclusion from the grand jury of an identifiable special group as there was in *Smith* v. *Texas, supra,* and similar cases. But the bad practice here was a like one, and fraught with similar danger to the rights of citizens, and to the grand jury as a public institution. To deal with such basic errors we need no statutory warrant (see *People* v. *Glen,* 173 N. Y. 395, *supra; People* v. *Nitzberg,* 289 N. Y. 523, *supra; People* v. *McLaughlin,* 291 N. Y. 480, 483). Supreme Court Justice NELSON, at Circuit, wrote this about the New York law of grand juries and indictments, in *U. S.* v. *Reed,* 27 Fed. Cases, No. 16134, page 729: " Suppose the case of a grand jury not drawn at all, but admitted to have been packed. Can a man indicted by it be cut off, by the provisions of the Revised Statutes, from raising the objection? "

The protection with which the people of this State surrounded their liberty and property by writing into our State Constitution (art. VI, § 1) an absolute ban against the deprivation thereof " without due process of law " is undefined and, as a practical matter, undefinable. But in applying it, we are not left without guides, plainly stated of old by our courts. To meet the test, criminal proceedings must be " instituted and conducted accord-

ing to the prescribed forms and solemnities for ascertaining guilt " (Bronson, J., in Taylor v. Porter, 4 Hill 140, 146–7). Due process means procedure having " the sanction of settled usage " (People v. Adirondack Railway Co., 160 N. Y. 225, 236, affd. 176 U. S. 335.) It " according to Lord Coke, means being brought in to answer, according to the ' old law of the land ' " (Westervelt v. Gregg, 12 N. Y. 202, 212). The procedure here followed meets no such test.

Perhaps these appellants should be indicted, but the mantle of due process, like the rain, falls alike upon the just and the unjust. Whatever be their guilt and whatever the motives of the prosecution, we have our own duty to invalidate proceedings so arbitrary and unwarranted. " The policy of the law is to inspire confidence in the administration of justice " (Northrup v. The People, 37 N. Y. 203, 206). The Special Term was right in dismissing these indictments.

In the organization of this Grand Jury there was adopted another arbitrary and unlawful practice, also. After twenty-three grand jurors had been picked and sworn, the court, before delivering his charge to the Grand Jury, ordered the exclusion from the courtroom of all persons other than the chosen jurors, the court officers and the prosecutor and his assistants. That was a violation of section 4 of the Judiciary Law, and a serious infraction of the settled rule that court proceedings, with a few necessary exceptions, are to be conducted not in secrecy, but in the open (see Cooley, Constitutional Limitations [8th ed.], Vol. 1, p. 647). There is no good reason why there should be anything secret about a presiding justice's charge to a grand jury. New York State grand juries have been instructed in open court ever since the charge to the first such body, the Grand Inquest of the County of Ulster, was delivered by Chief Justice Jay, at Kingston, in 1777. The practice followed in the present case was clearly illegal. It is easy enough to dismiss such things as passing incidents, not shown to be prejudicial to anyone, but the destruction of any one of the traditional procedures set up to protect the public against arbitrary uses of judicial power, is no small thing. If those safeguards can be taken away, some in this case, some in others, then in the end the whole carefully built up protective structure will fall apart, and unrestrained power will have every citizen at its mercy.

The order of the Appellate Division should be reversed and the motions to dismiss these indictments granted, with leave to resubmit the cases to another grand jury.

THACHER, J., concurs with LEWIS, J.; LEHMAN, Ch. J., concurs in separate opinion; CONWAY, J., concurs in separate opinion; DESMOND, J., dissents in opinion in which LOUGHRAN and DYE, JJ., concur.

Orders affirmed.