THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN BROPHY, Appellant. (And Ten Other Actions.)

Argued June 4, 1952; decided July 15, 1952.

*Daniel H. Prior, Edward T. Sullivan* and *Ray F. Fowler* for appellants. The Grand Jury was illegally chosen, contrary to customary and lawful procedures, a large number of qualified persons were arbitrarily excluded from service thereon, and the Grand Jury was packed with persons of a political faction. (*People* v. *Prior,* 294 N. Y. 405; *Matter of Shea* v. *Swift,* 292 N. Y. 116; *People* v. *Kruger,* 302 N. Y. 447; *State* v. *Cantrell,* 21 Ark. 127; *Dutell* v. *State,* 4 Greene [Ia.] 125; *People* v. *Minet,* 296 N. Y. 315.)

*Nathaniel L. Goldstein, Attorney-General* (*Paul W. Williams, Harris B. Steinberg* and *John Benjamin Carroll* of counsel), for respondent. I. The Grand Jury was properly selected and the court, vested with a discretion in excluding and excusing talesmen, properly exercised that discretion. (*Butler* v. *Glens Falls, S. H. & F. E. S. R. R. Co.,* 121 N. Y. 112; *Balbo* v. *People,* 80 N. Y. 484.) II. Even if talesmen had been erroneously excused or excluded from service on the Grand Jury, there would have been no basis for dismissing the indictments. (*People* v. *Prior,* 294 N. Y. 405; *People* v. *Borgstrom,* 178 N. Y. 254; *People* v. *Glen,* 173 N. Y. 395; *People* v. *Petrea,* 92 N. Y. 128; *Howard* v. *Kentucky,* 200 U. S. 164; *Brown* v. *New Jersey,* 175 U. S. 172; *Hayes* v. *Missouri,* 120 U. S. 68.) III. Defendants' constitutional rights were not impaired by the drawing of the second panel in the County Clerk's office. (*Friery* v. *People,* 2 Abb. Ct. App. 215; *People* v. *Kruger,* 302 N. Y. 447; *Fletcher* v. *Commonwealth,* 239 Ky. 506.) IV. No constitutional rights of defendants were impaired by the prosecutor's use of a " list " of officeholders in questioning the talesmen, nor were any rights prejudiced by the investigation of talesmen or the use of the checklists of talesmen. (*People* v. *Prior,* 294 N. Y. 405; *Fay* v. *New York,* 332 U. S. 261; *Akins* v. *Texas,* 325 U. S. 398; *Snowden* v. *Hughes,* 321 U. S. 1.)

FROESSEL, J.   By order of the Governor, an Extraordinary Special and Trial Term of the Supreme Court was appointed to be held in Saratoga County for the purpose of inquiry, prosecution and trial in relation to " gambling, bribery and corruption, public offices and officers, the collection of public revenues, or the administration of justice ", and as to any violation of law " by any official, officer, agent or employee of the State, or of the county of Saratoga or of any subdivision thereof or political or civil entity situated therein, or by any person or corporation aiding   *   *   *   such official, officer, agent or employee ".

Defendants in these eleven cases were indicted in the course of said investigation for gambling and related offenses, to which indictments they pleaded not guilty.   They thereupon moved to set aside the indictments, not under any provision set forth in section 313 of the Code of Criminal Procedure, but under the inherent power of the courts to set aside an indictment found in such manner as to violate constitutional rights.   It is alleged that their rights under both Federal and State Constitutions have been violated, depriving them of due process of law and of equal protection of the laws, in that they have been indicted by a body not legally constituted as a Grand Jury.   This result, it is asserted, flows from the alleged fact that the Grand Jury was " packed " with persons of a particular faction of the Republican party, to the serious and substantial prejudice of defendants.   The alleged " packing " is said to have been accomplished (1) through the use of a list of 234 names of Saratoga County public officials and others, the venireman's mere acquaintanceship among such persons being, as it is claimed, a ground of exclusion, and (2) through the use by the court of secret information sheets in ruling upon challenges to the talesmen.

In addition to the foregoing, it is urged that an extra panel of jurors was not drawn in the manner provided by statute (Code Crim. Pro., § 231), with resulting prejudice.   The Appellate Division, reversing Special Term, denied the motion to dismiss the indictments.

If the jury as impaneled is an impartial body, no constitutional rights may be said to have been impinged upon, and mere error, not resulting in prejudice, is insufficient to invoke the power

of the courts to look behind the indictments in a case not provided by statute (*People* v. *Prior,* 294 N. Y. 405; *People* v. *Glen,* 173 N. Y. 395; *People* v. *Petrea,* 92 N. Y. 128; *Rawlins* v. *Georgia,* 201 U. S. 638; see, also, *People* v. *Borgstrom,* 178 N. Y. 254; *Hyde* v. *United States,* 225 U. S. 347, 374). " The defendant's right is a neutral jury. He has no constitutional right to friends on the jury " (*Fay* v. *New York,* 332 U. S. 261, 288–289). There is no claim here that any member of the Grand Jury was individually biased or prejudiced against defendants, and hence there can be no prejudice in the exclusion of talesmen, unless it be shown that there was a " sustained, systematic effort by the court arbitrarily to exclude from the final panel persons of a particular classification " (*People* v. *Prior, supra,* p. 410). It is our conclusion that no such unlawful effort appears in this record.

The list of names above referred to, unlike " the mysterious list " used in the *Prior* case (*supra,* p. 422), was placed in evidence and was at all times available for inspection by interested persons. The use made of the list was not improper, for it merely served as a convenient method of shortening the *voir dire* examination. Scrutiny of the record reveals that it was not employed as a pretext or subterfuge for the elimination of unwanted jurors; on the contrary, with possibly a few exceptions, there was proper basis for the court's action in sustaining challenges to those excused, beyond the mere fact of acquaintanceship with persons on the list. Out of 153 talesmen called for the *voir dire* examination, 119 were excused for good and sufficient reasons, 23 were selected, and 11 were challenged for bias under subdivision 6 of section 239 of the code, despite their apparent willingness to serve. As to these 11, it may be said that the evidence with respect to a small number of them, as it appears in the record without benefit of the court's observation of the talesmen and their demeanor, did not warrant sustaining the challenge, but that did not affect the impartiality of the Grand Jury and its conformity to the traditional standards governing that body.

Examination of both selected and rejected jurors fails to disclose any pattern of acceptance or elimination. Rather than on a political or other unlawful basis, the selection of jurors

appears to have been motivated solely by the desire of court and prosecutor to obtain a jury which, under all the circumstances, could consider matters brought before it in a manner fair both to accused persons and to the People of the State of New York.

The charge that the court used secret information sheets in ruling upon challenges is based largely on assumption and surmise. The fact that the court may have had before it some information relating to the panel of grand jurors, prior to or even during the *voir dire* examination, is not sufficient, in and of itself, to impugn the integrity of the court, for, as this record indicates, local conditions were such that the membership on the Grand Jury had been consistently limited during a period of seventeen years, and there was an unduly high incidence thereon of officeholders, their wives and close relatives. The People, as well as a defendant, are entitled to a fair jury. The burden of proving discrimination purposeful and intentional is on defendant (*Fay* v. *New York, supra,* p. 285). We do not think the record supports the accusation so freely leveled at the court by defendants.

The alleged prejudicial departure from proper · procedure in the drawing of the second panel of veniremen was neither a substantial variance from the mode provided by section 231 of the Code of Criminal Procedure nor prejudicial. It lies wholly in the fact that such panel was drawn, in the presence of the court and the public, including members of the press, in the main business office of the county clerk, rather than in the courtroom. It appears that the court, in adjourning, announced publicly to all present in the courtroom that the drawing would take place immediately thereafter in the adjoining office of the county clerk, who is also the clerk of the court. The jurors were then drawn in precisely the same manner as was the original panel. The requirements of public notice relating to the drawing of additional jurors were thus observed and it cannot be said that any essential element of the statute was omitted. Obviously, no prejudice could result to defendants in these circumstances (see *People* v. *Petrea, supra,* p. 143).

This case is controlled by the principles enunciated in *People* v. *Prior* (*supra*) and it is our conclusion that the order of the Appellate Division should be affirmed.

DESMOND, J. (concurring). In 1945, when we decided *People* v. *Prior,* I said in dissent (294 N. Y. p. 417 *et seq.*) that the methods used in selecting that Grand Jury violated not only the Code of Criminal Procedure, but all the settled rules, and permitted a prosecutor to exclude and include grand jurors at will. Therefore, I thought and still think, indictments found by a Grand Jury so picked should be dismissed. Methods substantially similar were used in the present case and resulted in some exclusions. I still say that those methods are destructive of the Grand Jury as a traditional instrument of public justice in a free society. However, I am bound by the holding in *People* v. *Prior* (*supra*) that indictments so found are not void, and so I vote to affirm here.

DYE, J. (concurring). I concur in the result for I feel obliged to do so under authority of *People* v. *Prior* (294 N. Y. 405), excepting for which the methods employed in the selection of talesmen should be disapproved, for the reasons stated in the dissenting opinion by DESMOND, J., in which I concurred.

LEWIS and FULD, JJ., concur with FROESSEL, J.; LOUGHRAN, Ch. J., concurs on the authority of *People* v. *Prior* (294 N. Y. 405); DESMOND and DYE, JJ., concur in separate opinions; CONWAY, J., not sitting.

Order affirmed.