Charles J. Gattghah, J.
The above-captioned defendants have moved to dismiss the above indictments upon numerous grounds. They raise more than 35 points. Their claims, however, can be grouped into six categories. They claim (1) that the Grand Jury which returned the indictments was improperly formed and that it acted improperly, (2) that the indictments and the counts thereof are defective, (3) that the defendants have been denied right to a speedy trial, (4) that the prosecutions are barred by reason of double jeopardy, (5) that evidence before the Grand Jury was not sufficient to sustain the indictments, and (6) that regardless of guilt or innocence of the defendants, the indictments should be dismissed in the interests of justice. The defendants also urge that evidentiary hearings be held on these motions to determine (1) whether the G-rand Jury improperly refused to hear evidence relating to alleged criminal conduct on the part of persons other than the defendants, and (2) whether there was sufficient evidence before the *584 Grand Jury to support the indictments, and further, whether witnesses were improperly coerced to testify. Their voluminous moving papers, affidavits, and briefs attest to the zeal of their attorneys in raising and litigating every possible basis for dismissal of the indictments before trial.
The court has studied these briefs, the affidavits and exhibits submitted by the parties and has examined the various authorities cited therein. The court has also read all of the Grand Jury testimony, consisting of several thousand pages, covering Indictments 1 through 37 and the Grand Jury proceedings up to and including August 31, 1973. Based upon the foregoing and upon the arguments of counsel and the Criminal Procedure Law, it makes the following decision:
AS TO THE GBAUD JUEY
The defendants do not claim that the process by which prospective" grand jurors were selected was designedly fraught with impropriety. On the contrary,-they admit that the jurors were selected in conformity with the applicable statutes. They do claim that the statutes are unconstitutional in that they disqualify felons and persons under 21 from service, permit women to exempt themselves, set up residency requirements, and result, in this case, in a Grand Jury whose members are not mathematically proportionate in sex, race and age to the population of Wyoming County.
The New York Court of Appeals, the United States Supreme Court and the United States Court of Appeals, however, have already decided this argument against the defendants (People v. Chestnut, 26 N Y 2d 481; Carter v. Jury Comm., 396 U. S. 320; Alexander v. Louisiana, 405 U. S. 625; United States v. Ross, 468 F. 2d 1213, cert. den. 410 U. S. 989).
The court has examined the transcript of the proceedings of November 29,1971, when the Grand Jury was drawn. Although there is no specific provision in the article 190 of the CPL therefor, Justice Ball questioned the prospective jurors with regard to their knowledge of the matters concerning the Attica situation through conversations, news reports or experience, their familiarity with the persons involved, and as to their bias or prejudice. He allowed the prosecutor to join in the questioning even though the CPL makes no provision for such practice. The court does not find that the procedure used was prejudicial to the rights of the defendants; The record supports a finding that a sincere effort was made by the court and prosecutor to empanel a grand jury that was not infected with bias or prej *585 udice to anyone subject to its scrutiny. The defendants have otherwise failed to demonstrate facts indicating such prejudice. Regardless of the foregoing, the court is of the opinion that it lacks the jurisdiction to judicially review the acts of Justice Ball in drawing the Grand Jury and the various rulings made in response to applications of counsel purporting to represent prospective defendants.
The defendants further claim that the indictments must be dismissed by reason of the principle of selective enforcement as enunciated in Yick Wo v. Hopkins (118 U. S. 356), and as interpreted in New York by People v. Utica Daw’s Drug Co. (16 A D 2d 12). They allege, through their counsel, that criminal acts were committed by agents or officers of the State during and after the retaking of the facilities at Attica in September, 1971, and that since no indictments have been returned against persons other than Attica inmates, the Attica defendants are being subjected to discriminatory or selective enforcement of the law.
The principle of selective enforcement, however, is not as broad as the defendants would have us believe. At pages 17 and 18 of the Daw’s decision the court stated that “ The question is rather whether in a community in which there is general disregard of a particular law with the acquiescence of the public authorities, the authorities should be allowed sporadically to select a single defendant or a single class of defendants for prosecution because of personal animosity or for some other illegitimate reason ” (emphasis supplied). After discussing situations in which selective enforcement is not impermissible, the Daw’s court further stated (p. 21) that “ It is only when the selective enforcement is designed to discriminate against the persons prosecuted, without any intention to follow it up by general enforcement against others ” (emphasis supplied). It is evident that the evil to be avoided is the malicious and sporadic application of a generally disregarded law. It is also evident to the court that the crimes charged in the indictments, that is, kidnapping, coercion, assault, etc., are not generally disregarded anywhere in the State of New York.
Assuming, for the sake of argument, that criminal acts were in fact committed during and after the retaking of the facilities at Attica by employees or agents of the State, defendants also assume without supporting or substantiating facts that the Grand Jury (1) wrongfully did not inquire into the possibility of official misconduct, or (2) wrongfully refused to inquire into the possibility of official misconduct, or (3) having heard testi *586 mony concerning official misconduct sufficient to support an indictment have wrongfully refused to indict. In one of their briefs the defendants acknowledge the principle that there is a strong presumption of regularity that attaches to Grand Jury proceeding, and that it has been held that this presumption cannot be overcome by surmise, allegations based on information and belief, or by suppositions or conclusions of law (People v. Nixon, 33 A D 2d 403). On the other hand, they, as noted above, urge surmise and supposition upon the court and ask it to conclude that the Grand Jury corruptly acted or corruptly failed to act. The court cannot make such assumption, particularly when the defendants refuse to submit whatever evidence they may have concerning official misconduct to the Grand Jury. The court can only presume that the Grand Jury, as long as it remains sitting, shall take and act upon evidence in conformity with its oath and obligation.
The court, having concluded from all of the material before it that the defendants have failed to make out a case of unlawful selective enforcement, nevertheless, and in the exercise of its discretion and in the interests of justice, examined the Grand Jury minutes in this context. After completing the entire text, it failed to find any evidence indicating that the Grand Jury violated its oath and duties in any manner. The Grand Jury, with the assistance of the prosecutor, conscientiously inquired into all aspects of the Attica uprising and its aftermath and returned indictments in those cases for which it had legally sufficient evidence.
The Grand Jury still sits and is ready to hear any further evidence as to any crimes committed by any person during the time in question. If the defendants have any specific evidence as to any official misconduct, they should avail themselves of the opportunity to present such evidence to the Grand Jury.
AS TO THE INDICTMENTS AND COUNTS
The defendants complain that the indictments contain counts which are multiplicitous, redundant and duplicitous.
The Grand Jury, by charging defendants in Indictments No. 11/72 and 27/72 with counts having identical wording have not violated the prohibition against duplicitous counts. These counts are plain and specific and presumptively charge the defendants therein with separate offenses. The People so claim in their answering affidavit. Whether they in fact are separate offenses will be settled by the evidence on trial, if not sooner by the further bill of particulars to be ordered by this court.
*587 The court does not find that any of the other counts are improperly included in the indictments. The provision of articles 40 and 200 of the CPL specifically allow: (1) charging of lesser included offenses, (2) separate counts for separate victims, and (3) separate counts if the same crime may be committed in different ways.
In addition to the wide discretion of the trial court in selectively submitting charges to a jury, the Legislature anticipated the possibility of an indictment, by reason of the number of counts or the complexity of the case, imposing an unduly heavy burden upon the jury in consideration of a case. It has in such a situation, given the trial court added discretion to submit to the jury only such counts which are representative of the People’s case. (CPL 300.40, subd. 6, par. [b].) This court is confident that the trial courts, if the individual situation so require, will avail themselves of the prerogatives given by the above procedural provisions.
The defendants further complain that sections 135.65 (Coercion in the first degree), 205.25 (Promoting prison contraband in the first degree) and 135.20 (Kidnapping in the second degree) of the Penal Law are violative of the State and Federal Constitutions. They ask that the counts of the indictments charging violations of these statutes be, therefore, dismissed.
Suffice it to say, the court has closely examined these statutes and concludes that they are not. constitutionally objectionable.
AS TO SPEEDY TRIAL
The court rejects the thesis of defendants that their right to a speedy trial of the charges contained in these indictments commenced on September 13, 1971. Such right occurs only “ after a criminal' action is commenced ” (CPL 30.20, subd. 1) or after a person has been accused of a crime (United States v. Marion, 404 U. S. 307). Here, the accusations were made and the criminal action commenced in December, 1972 when the indictments were returned and filed.
The court also rejects the defendants’ thesis that their rights to a speedy trial have been violated by the 15-month lapse of time between the dates of the crimes alleged in the indictments and the filing of the indictments. The People have the power to commence prosecution any time within the period of limitation (People v. Winfrey, 20 N Y 2d 138). Furthermore, in view of the volume of evidence and the vast number of witnesses called before the Grand Jury, this lapse of time, under all of the circumstances, is reasonable.
*588 The court has reviewed the claim of defendants that the provisions of CPL 30.30 have been violated. The records indicate, as to each defendant, that the six-month ready for trial period has not elapsed but has been tolled pursuant to one or more provisions of subdivision 4 of CPL 30.30.
AS TO THE CLAIM OE DOUBLE JEOPARDY
The defendants claim that certain inmates were physically punished during and after the retaking of the Attica facilities and that they were thereafter segregated into special housing at that institution. They contend that such physical punishment and segregation bars the instant prosecutions by reason of double jeopardy. Not one of the defendants, however, has seen fit to submit his own affidavit setting forth specific allegations of corporeal punishment inflicted upon him.
Nevertheless, in order for the principle of double jeopardy to be a bar to the prosecution herein, there must be a previous prosecution pursuant to CPL 40.20. Subdivision 1 of that section states that “ A person may not be twice prosecuted for the same offense.” Subdivision 1 of CPL 40.30 declares that a person is prosecuted within the meaning of CPL 40.20: “ when he is charged therewith by an accusatory instrument filed in a court of this state or of any jurisdiction within the United States ”. There, of course, has been no prior prosecution against the defendants, within the meaning of article 40 of the CPL, for the acts charged in these indictments. A claim of double jeopardy arising out of administrative punishment was rejected in Matter of Escobar v. Roberts (29 N Y 2d 594, cert. den. 404 U. S. 1047).
AS TO SUFFICIENCY OF THE INDICTMENTS AND INSPECTION OF GRAND JURY MINUTES
Subdivision 2 of CPL 210.30 requires that a motion to dismiss on the ground of insufficiency of evidence “ must allege that there is reasonable cause to believe that the grand jury evidence was not legally sufficient * * * and must contain sworn allegations of fact supporting such claim. Such allegations of fact may be based either upon personal knowledge of the affiant * * * or upon information and belief, provided that in the latter event the sources of such information and the grounds of such belief must be stated.” The defendants have not sustained their burden of demonstrating that there is reasonable cause to believe that the evidence before the Grand Jury herein may have been legally insufficient. Nevertheless, the court, in its discretion, inspected the Grand Jury minutes and finds that *589 the Grand Jury was presented with sufficient legal evidence, which if uncontroverted or unexplained, would support convictions by the triers of the facts. (This finding does not apply to defendant Bilello in regard to Counts 2 and 4 of Indictment No. 15. A motion addressed to said counts has been made by said defendant before Justice Carman F. Ball.)
In examining the Grand Jury minutes, the court also found that none of the scores of inmates who testified had been subjected to coercion, threats or harassment in any form by the Grand Jury or the prosecutor.
The court noted at least one instance in which an inmate refused to testify concerning wounds inflicted upon him by other inmates. The inmate was promptly excused without being badgered and without even being threatened with contempt proceedings. The court also noted that none of the Grand Jury witnesses, including inmates, complained to the Grand Jury that they had been subjected to threats or coercion of any sort in order to obtain their attendance and testimony or that their testimony was anything other than their own voluntary product.
The court lacks the authority to allow the defendants to otherwise examine the Grand Jury minutes themselves (Matter of Proskin v. County Ct. of Albany County, 30 N Y 2d 15).
AS TO DISMISSAL IN THE INTEREST OF JUSTICE
The court, in the exercise of its discretion, does not consider the assertions of the defendants a sufficient basis for dismissal of the indictments in the furtherance of justice.
The defendants’ motions are, therefore, denied in these and all other respects.