OPINION OF THE COURT
Lyman H. Smith, J.
The January 1977 Extraordinary and Special Grand Jury of Onondaga County charges the defendants in a two-count indictment (No. S8/1978) with crimes of conspiracy, fourth degree (Penal Law, § 105.00) and, similarly, conspiracy in violation of section 446 of the Election Law. Indictment No. S8/1978 results from an extensive investigation of alleged illegal political fund-raising practices within various governmental departments of Onondaga County. The investigation has been conducted under the direction of Onondaga County’s Special Prosecutor, Peter D. Andreoli.
Named as defendants in Indictment No. S8/1978 are the present Onondaga County Executive, a former chairman of *908 the Onondaga County Legislature, two former chairmen of the Onondaga County Republican Committee and a former vice-chairman of financial affairs of the Onondaga County Republican Committee. The indictment accuses the defendants of conspiring with others,* between 1970 and 1977, to raise political funds for the benefit of the Onondaga County Republican Committee, initially by assessing and collecting from employees of various Onondaga County governmental departments a fixed percentage of their annual salaries and, after 1973, by the solicitation of political contributions and assessments from subordinate public employees in government offices and buildings during business hours through ticket sales to partisan fund-raising events and, similarly, through the use of varying degrees of official, but illicit, influence and authority.
The object crimes charged in this conspiracy indictment include official misconduct (Penal Law, § 195.00), prohibited political activities (Civil Service Law, § 107, subd 3) and prohibited political assessments (Election Law, §§ 447, 484).
Defendants jointly move pretrial (CPL art 255) for dismissal of Indictment No. S8/1978 on several grounds. Alternatively, they seek discovery of information, materials and documents purportedly within the possession and control of the Special Prosecutor (CPL art 240).
(The following constitutes a portion of the court’s decision dispositive of the defendants’ pretrial omnibus motion, inter alia, to dismiss the above-identified indictment.)
SELECTION OF THE GRAND JURY PANEL
Defendants seek dismissal of the instant charges on grounds that the Grand Jury which returned Indictment No. S8/1978 was illegally constituted (CPL 210.35, subd 1). Specifically, defendants claim that the Grand Jury selection resulted from an impermissible and unconstitutional voir dire. They allege a systematic and intentional design on the part of the court to select as grand jurors only those *909 persons who appeared (during the voir dire) to have no interest or involvement, financial or otherwise, in governmental or political activities. The selection process, defendants contend, restrictively qualified those persons as grand jurors who were politically naive, and prejudiced against the defendants and, as a result, deprived them of a Grand Jury of their peers. Further, defendants urge that the selection process denied to them a Grand Jury representative of a true cross section of the community.
It must be noted, defendants identify no source of “information”, nor do they proffer grounds for their “belief’, that the court’s questioning of potential grand jurors was conducted pursuant to a request of the Special Prosecutor and with an intended purpose to assure empanelment of only politically naive grand jurors. These unseemly, unfounded and untrue charges, denied by the Special Prosecutor, will not suffice to trigger dismissal of the instant indictment. (See Buell v Van Camp, 119 NY 160; Ingram v Robbins, 33 NY 409; Matter of Huff, 136 App Div 297.)
The thrust of defendants’ speculative challenge to the Grand Jury selection process is simply that prejudice must follow automatically upon the failure to seat those grand jurors who expressed (during the voir dire) a past or contemporaneous involvement in politics. This conclusion suffers from two obvious and fatal assumptions: first, that potential grand jurors revealing particular political savvy, but nevertheless excused, would have ignored, had they been chosen to serve, evidence unfavorable to the defendants and, indeed, would have condoned defendants’ conduct by virtue of their identifiable and common political experiences; second, that those grand jurors chosen to serve and who revealed no previous involvement in politics were more prone to return a true bill against the defendants because of the defendants’ political service and a concomitant negative attitude (on the part of the grand jurors) which would automatically be directed to all politicians, including the defendants.
Neither of these assumptions is supportable.
Defendants’ assertion that the subject indictment is defective because the Grand Jury was “apolitical” and, there *910 fore, “unrepresentative” of the community, is conclusory, unwarranted and speculative. To urge that a grand juror should have a history of political activism in order to fairly consider charges of illicit political fund raising is akin to a demand that a grand juror be experienced in thievery in order to impartially vote on a charge of grand larceny, or that he be an accomplished street fighter in order- to deliberate impartially on an accusation of assault.
It is true that an accused has a constitutional right to have his case presented before an impartial Grand Jury (Castaneda v Partida, 430 US 482; Peters v Kiff, 407 US 493; People v Brophy, 304 NY 391). However, this protective right does riot, and never has, guaranteed one the right to have a Grand Jury composed only of individuals who have specifically similar and identifiable interests or occupations to those of the accused. (See Fay v New York, 332 US 261.)
The disposition of defendants’ instant challenge turns on one fundamental issue: Is the court, despite revelation during the voir dire of interpersonal, business, marital, family or political relationships, bound to accept an expurgatory statement of a prospective juror that he will act impartially?
People v Prior (268 App Div 717, affd 294 NY 405) answers the question in the negative.
Drawn by random computer selection, those talesmen, not otherwise excused or found exempt, were examined by the court for the purpose of determining whether any were biased as to the subject matter of the investigation. People v Prior (supra, pp 721-722) teaches that: “[I]t was incumbent upon the Presiding Justice to determine, in the exercise of a sound discretion, and when the occasion arose, whether a prospective juror was biased as to any matters that might be the subject of inquiry, or as to any persons who might be subject to investigation. Manifestly the existence of bias, since the same is purely a mental attitude, is a difficult matter to determine. The latitude of the court’s discretion in this regard cannot be formulated within any precise boundaries, because if the issue was raised he was confronted in each instance with a question *911 of fact requiring him to take into consideration various factors and to apply a sound judgment to the whole. Quite obviously the latitude of the court’s discretion in this connection must necessarily be more extensive than that exercised in the selection of a trial jury. In the latter instance the situation embraces and is limited to a known defendant and a precise issue defined by indictment, and moreover there is a leeway for either party by way of peremptory challenge. In the selection of a grand jury there is no such clear cut limitation, and no provision for peremptory challenges. In such a case the court has the duty as well as the right to consider all of the circumstances revealed; the scope and background of the investigation; the relation, friendship or acquaintance of a prospective juror with any of the people who might be involved, or any connection or attitude of the juror with any of the matters subject to investigation; and not only the answers of the juror under oath, but also his appearance and demeanor on the stand. He is not bound to accept the statement of a juror that he can act impartially.”
In its affirmance of the Appellate Division, the Court of Appeals said (p 410): “When, as in the present case, the scope of inquiry by a grand jury is broad and may lead into official, business or political relationships involving numerous individuals, a Trial Justice, in the exercise of a ‘sound discretion’ to determine the availability of a prospective juror, must of necessity consider many factors which might produce a ‘state of mind’ which is prejudiced for or against the subject of inquiry.”
The Court of Appeals also said (p 411): “In the circumstances with which he had to deal [the Trial Justice] was not required to accept a prospective juror’s statement that he could act impartially *** Knowing, as we do, that the causes operating to produce bias are of a nature which it is impossible strictly or accurately to define, we cannot rule as a matter of law that the Trial Justice erred in those instances.”
In conducting a voir dire of talesmen, prospectively called to serve as grand jurors or criminal trial jurors, this court conceives that it has the highest obligation, first, to the prospective juror that, if sworn, he may serve with a *912 free mind, unfettered by personal discomfiture, embarrassment or subconscious restraint and, second, to all who stand before the bar of justice, to assure that such juror will be ultimately able to make his determination fairly and impartially, without fear, favor or sympathy. Our theory of justice relies upon finding fair and impartial jurors. So, too, must the courts.
The objective standard (for detection of subjective bias or prejudice) which the defendants now seek to impose upon our courts would, indeed, render the voir dire process easier to conduct. It would, however, nullify the fundamental purpose of the voir dire, i.e., to choose and swear a truly fair and impartial jury. Simply put, that is the reason our courts are “not required to accept a prospective juror’s statement that he could act impartially.” (People v Prior, supra, p 411.)
The scope of the instant investigation has been unusually broad. Executive Order No. 42 authorizes, indeed, mandates that this be so. Consequently, in the selection of the January 1977 Extraordinary and Special Grand Jury, this court had a duty to anticipate associations between persons who could conceivably be under investigation, persons who could reasonably be expected to appear and testify before the Grand Jury and potential grand jurors, whether such relationships were occupational, family, social or political in nature, which could potentially undermine the impartiality, evenhandedness and effectiveness of the Grand Jury.
Defendants have presented no evidence to suggest that the Grand Jury panel selected was anything but fair and impartial in the rendering of Indictment No. S8/1978. (See People v John, 76 Misc 2d 582.) Accordingly, this branch of defendants’ motion is denied.

 Other public officials who have been separately charged with participation in the alleged conspiracy include a former deputy comptroller (has pleaded guilty), a current deputy comptroller (a petit jury was unable to agree on a verdict), a county election commissioner (has pleaded guilty), the County Attorney (has pleaded guilty) and a former District Attorney (is awaiting trial).