THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK S. HARRIS, JAMES J. McGUINESS and FRANK J. CASSIDY, Appellants.

Argued April 18, 1945; decided July 19, 1945.

*Robert E. Whalen* and *George Myers* for appellants. I. The evidence before the grand jury, taken together, was not such as, even if unexplained or uncontradicted, would warrant a conviction by a trial jury. (*Lewkowicz* v. *Queen Aeroplane Co.*, 154 App. Div. 142, 207 N. Y. 290.) II. The Legislature never intended that the conceded acts of defendants should constitute a crime. (*People* v. *Shakun*, 251 N. Y. 107; *People* v. *Phyfe*, 136 N. Y. 554; *Burks* v. *Bosso*, 180 N. Y. 341; *People* v. *Benc*, 288 N. Y. 318; *People* v. *Fein*, 292 N. Y. 10; *Hornstein* v. *Paramount Pictures*, 292 N. Y. 468; *United States* v. *Lacher*, 134 U. S. 624; *United States* v. *Bathgate*, 246 U. S. 220; *People ex rel. Sherwood* v. *City of Buffalo*, 127 Misc. 290; *Canteline* v. *McClellan*, 258 App. Div. 314, 282 N. Y. 166; *People ex rel. Burnham* v. *Flynn*, 114 App. Div. 578, 189 N. Y. 180.)

*Nathaniel L. Goldstein, Attorney-General* (*Stanley H. Fuld, Harris B. Steinberg, Herbert Stern* and *A. Cuyler Ten Eyck, Jr.*, of counsel), for respondent. I. The evidence before the grand jury established defendants' guilt of the conspiracy charged. (*United States* v. *Smith*, 35 F. 2d 516; *People* v. *Luciano*, 277 N. Y. 348; *People* v. *Sweeney*, 213 N. Y. 37; *People* v. *Van Tassel*, 156 N. Y. 561; *People* v. *Miles*, 123 App. Div. 862, 192 N. Y. 541.) II. The conspiracy charged is within section 580 of the Penal Law. (*People* v. *Gitlow*, 195 App. Div. 773, 234 N. Y. 132, 268 U. S. 652; *People ex rel. Childs* v. *Knott*, 187 App. Div. 604, 228 N. Y. 608; *Drew* v. *Thaw*, 235 U. S. 432, *Comm.* v. *Donoghue*, 250 Ky 343; *Comm.* v. *Hunt*, 4 Met. 111; *People* v. *Tenerowicz*, 266 Mich. 276; *State* v. *Burnham*, 15 N. H. 396; *State* v. *Nugent*, 77 N. J. L. 84; *Comm.* v. *Valverdi*, 218 Pa. St. 7; *People* v. *Flack et al.*, 125 N. Y. 324; *People* v. *Willis*, 158 N. Y. 392; *People* v. *Squire*, 20 Abb. N. Cas. 368.)

THACHER, J. At an Extraordinary and Trial Term of the Supreme Court appointed by the Governor to be held at Albany, Frank J. Cassidy, Commissioner of the Department of Water and Water Supply of the City of Albany, appeared before the Extraordinary Grand Jury pursuant to subpœna in an inquiry

into the conduct of his official duties as such Commissioner. He refused to sign a waiver of immunity against subsequent criminal prosecution concerning such matters.

Article I, section 6, of the State Constitution provides, in part: " No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled in any criminal case to be a witness against himself, providing, that any public officer who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties, refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before such grand jury, shall be removed from office by the appropriate authority or shall forfeit his office at the suit of the attorney-general." It is to be noted that, unlike similar enactments — compare, for example, section 903 of the New York City Charter — there is no provision that a public officer who refuses to sign a waiver of immunity shall not be eligible to election or appointment to any other office. Accordingly, the only consequence of such refusal is removal from office by the appropriate authority or forfeiture of the office at the suit of the Attorney-General.

The Deputy Attorney-General in charge of the proceedings before the Extraordinary Grand Jury advised Hon. Frank S. Harris, the temporary Mayor of the City of Albany, by letter, that the provisions of article I, section 6, of the Constitution require that in such cases such public official " shall be removed from office by the appropriate authority ". On the following day the Mayor acknowledged this letter and advised the special prosecutor that he had referred it to " our Corporation Counsel ", who was the defendant James J. McGuiness.

Thereafter, on June 2, 1944, the Extraordinary Grand Jury returned an indictment charging the defendants Cassidy, Harris and McGuiness with conspiracy to commit acts for the perversion and obstruction of justice and of the due administration of the laws (Penal Law, § 580, subd. 6). Others designated as conspirators but not as defendants were Andrew D. Kelly, Deputy Commissioner of Water and Water Supply, Lawrence J. Ehrhardt, City Comptroller, and John J. McManus, City Engineer, and persons unknown.

Perversion and obstruction of the due administration of the laws, as alleged in the indictment, is predicated upon refusal to comply with the constitutional mandate to remove the defendant Cassidy from office and upon his appointment to the office of Superintendent of Water Rent Delinquencies when he was known by the conspirators to be unfit and unqualified for appointment to a position of public trust and confidence. Perversion and obstruction of justice, as alleged in the indictment, is predicated upon obstructing and attempting to defeat and set at naught an action brought by the Attorney-General against Cassidy for judgment that he forfeit and vacate his office as Commissioner of the Department of Water and Water Supply, by creating a new office in the same department and with the same salary and procuring the appointment of Cassidy to that office. This indictment was dismissed at Special Term upon the ground, among others, that the evidence taken before the Grand Jury, if unexplained and uncontradicted, was not sufficient to warrant conviction by a trial jury. In the Appellate Division the order of dismissal was reversed, two of the justices dissenting and voting to affirm.

The question raised in *People* v. *Prior* (294 N. Y. 405) decided this day, as to whether the Grand Jury which returned the indictment was legally constituted, was also raised in this case. Having held in the *Prior* case that the Grand Jury was validly constituted, we make similar disposition of the question here and proceed to the consideration of the defendant's contention that the evidence before the Grand Jury was not sufficient to sustain the indictment.

Following the reference of the special prosecutor's letter to the Mayor to the Corporation Counsel, the Corporation Counsel did nothing except to give out a statement to the press to the effect that he thought that the City of Albany and the officials thereof were abundantly capable of running the affairs of the City of Albany without assistance from outside sources. The Attorney-General's action was commenced on May 2, 1944. On May 22, 1944, the last day to answer the complaint, Cassidy served his answer denying that he was Commissioner, whereupon the Grand Jury commenced an investigation and later returned the indictment herein. The evidence upon which the indictment was found may be summarized as follows:

The defendant Harris, temporary Mayor of Albany, testified that, having learned from the Deputy Attorney-General's letter that Cassidy could not remain in office, he did nothing except to turn over the letter to the defendant McGuiness and wait for the latter to tell him what he would have to do. McGuiness gave the Mayor no advice and Harris later learned that the Attorney-General had started a suit to remove Cassidy. He was present at the Board of Estimate and Apportionment when McGuiness introduced a resolution creating a new position — " Superintendent of Water Rent Delinquencies " — effective May 15, 1944, at an annual salary of $5,000, which was unanimously adopted without discussion. The defendant McGuiness and also the City Comptroller Ehrhardt and the City Engineer McManus were present in addition to the defendant Harris, who was presiding. At this meeting it was resolved that the person appointed to the position should, under the direction of the Commissioner of Water and Water Supply or his deputies, have the duty of compiling a list of delinquent water rents and rates and should formulate rates and methods and means of collecting the same. The witness testified that the problem of delinquent water rents had been discussed with Mayor Corning before he went into service leaving Harris in his office as acting Mayor. In justification of the creation of this position and the appointment of Cassidy, the Mayor testified that this was necessary for the safety of Albany; that it was essential to keep Mr. Cassidy in the City's service so as to have his advice and counsel in connection with the water supply; that no one understands every detail of this service as Mr. Cassidy does and that he thought it would be a dangerous thing to lose his services with the manpower shortage and the trouble they were having in all departments of the City. Harris frankly admitted that this job of Superintendent of Water Rent Delinquencies at $5,000 a year was created specially for Cassidy and that in fact it was a " tailor-made " job for him, and that he, the acting Mayor, participated in the " subterfuge " of keeping him in the City employ at the same salary.

Andrew V. Kelly, Deputy Commissioner of Water of the City of Albany, testified that he had been connected with the Water Department of the City of Albany for about twenty-two years and had been Deputy Commissioner for eight years;

that he had recently appointed Cassidy as a Superintendent of a new department of Water Rent Delinquencies at a salary of $5,000 a year, his salary being only $3,600 and the second deputy's only $2,700, all other salaries in the department being less than that. He said he first heard that there was to be a new department shortly before giving his testimony, when he was called to the Mayor's office. The Mayor told him the department was to be formed and he gave him Cassidy's name and asked him to appoint him for that department. Cassidy being out of town, Kelly was acting Commissioner. He had little knowledge of the duties of the office and in making the appointment took his orders from his superior without discussion, understanding that upon accepting the other job Cassidy would go out as Commissioner.

John J. McManus, City Engineer, testified that there was some discussion of the new position and the appointment of Cassidy at a meeting of the Board of Estimate at which the defendants Harris and McGuiness and Ehrhardt, the City Comptroller, were present but said he did not know who was to be appointed.

The defendant Frank J. Cassidy, upon being called, signed a waiver of immunity and testified that he had been with the Water Department of the City of Albany for twenty-two years, commencing as foreman in 1922, and that he had been appointed Commissioner of Water in January, 1935, and while still in that office about May 18 or 19, 1944, he was appointed Superintendent of Water Rent Delinquencies by Andrew Kelly, the Deputy Commissioner, while he was down in New York for a couple of days staying at the Hotel Dixie. He was surprised to learn of his appointment when he came back to Albany. He was vague in his description of the duties of the new position; he knew of no connection between his appointment and the suit of the Attorney-General, but was glad of the appointment because it gave him a new position at the same salary. He had only been in the new office a few days when he gave his testimony. When asked what he had done on the new job, he said: " I haven't done a thing, only start to organize and get a little *information* ", and that what he did was just around the office. He did go back to the same office that he had occupied when Commissioner, where he used the services of the same secretary.

The defendant McGuiness, Corporation Counsel, testified

that he was an *ex officio* member of the Board of Estimate and Apportionment and had attended the Board meeting on May 16, 1944; that he had explained the nature of the public officer's waiver of immunity to Cassidy before the latter was first subpœnaed before the Grand Jury and had advised him of the consequences of refusal or failure to sign such a waiver. He admitted making the statement to the press and that he knew at that time that Cassidy had refused to sign the waiver of immunity. Prior to the meeting of the Board of Estimate and Apportionment on May 16th, McGuiness spoke to Mayor Harris, Comptroller Ehrhardt and City Engineer McManus and told them he would introduce the resolution concerning the new position. He further admitted that he had prepared the resolution in order to create another bureau, another job and assistants which would take care of the delinquent water rents. The $5,000 salary was inserted without discussion but on his initiative. Contradicting the Mayor's testimony, he denied that the resolution had been introduced solely to relieve Cassidy of the embarrassing position in which he found himself by reason of having to answer the Attorney-General's ouster suit.

The legal effect of appointing Cassidy to another office was to vacate his office of Commissioner of the Department of Water and Water Supply upon his acceptance of the newly created office of Superintendent of Water Rent Delinquencies (Second Class Cities Law, § 19). His absence from Albany was necessary to confer power upon the Deputy Commissioner to make the appointment (Local Law No. 2, 1935). The Mayor instructed the Deputy to make the appointment during Cassidy's absence, and upon his return to Albany the next day he took his oath of office as Superintendent of Water Rent Delinquencies before the Mayor, thus vacating his office of Commissioner of Water and Water Supply.

The evidence before the Grand Jury supports the inference — if indeed it does not compel conclusion — that all of the defendants were acting together and in agreement to effectuate the removal of Cassidy from his position as Commissioner of the Department of Water and Water Supply and his appointment to the newly created position of Superintendent of Water Rent Delinquencies carrying the same salary. This was the objective

of all that was done, and everything that was done was obviously designed to accomplish that purpose. The action of the Board of Estimate and Apportionment creating the new position; the absence of Cassidy from the City so that his deputy might make the appointment as acting Commissioner; the acceptance of the appointment by Cassidy, and his qualification for the office, were all planned in advance. If such a plan and agreement is an unlawful conspiracy, there was evidence before the Grand Jury sufficient to warrant conviction before a petit jury. This accomplished plan was established by the testimony of the defendants themselves.

Accordingly, the only question which confronts us is whether these activities constituted a conspiracy " to commit any act * * * for the perversion or obstruction of justice, or of the due administration of the laws." The theory of the indictment is that the conspiracy contemplated: (1) perversion and obstruction of the due administration of the laws by refusing to comply with the Constitution of the State of New York which required removal of Cassidy by the appropriate authority; (2) perversion and obstruction of the due administration of the laws by procuring the appointment of Cassidy to a position of public trust when he was known to be unfit and unqualified, and (3) the perversion and obstruction of the administration of justice by obstructing, hindering, interfering with, impeding and attempting to defeat and set at naught the action brought by the Attorney-General to forfeit and vacate Cassidy's office as Commissioner of the Water Department.

There is certainly no evidence in the record that Cassidy was not qualified for appointment to the new office of Superintendent of Water Rent Delinquencies. Such evidence as was presented to the Grand Jury was to the effect that he was better qualified than any other available person. Nor can it be said that there was any perversion or obstruction of the administration of justice in bringing about his removal from the office of Commissioner of Water and Water Supply, for this was the only purpose to be accomplished by the Attorney-General's suit. Nor was there any perversion and obstruction of the due administration of the laws by bringing about his removal from that office, for that is the only consequence attached to his refusal to sign the waiver of immunity. It follows that,

if the public officer refusing to sign a waiver of immunity removes himself from his office or is otherwise removed, the constitutional requirement is satisfied and there is no perversion or obstruction of justice or of the due administration of the laws in voluntarily effectuating the only consequence imposed by the Constitution upon his refusal to waive immunity.

The gist of the crime of conspiracy as defined in this statute is agreement to do an unlawful act either as a means or as an end (*People* v. *Flack et al.,* 125 N. Y. 324), and if the unlawful act is merely *malum prohibitum,* the agreement must have been entered into with criminal intent and evil purpose as distinguished from a purpose to do the act prohibited in ignorance of the prohibition (*People of the State of N. Y.* v. *Powell et al.,* 63 N. Y. 88, cf. *Gardner et al.* v. *People of the State of N. Y.,* 62 N. Y. 299). Conspiracies to commit acts '' for the perversion or obstruction of justice, or of the due administration of the laws '', as defined in section 580 of the Penal Law, do not comprehend agreements to accomplish lawful ends by lawful means. Here we have such a case for all the acts of the defendants were lawful unless their common purpose and co-operative action made them unlawful. Thus neither the appointment of Cassidy to a new office, nor his acceptance thereof which vacated the old office, was an act prohibited by law. Nor did the legal consequences which flowed from them make them unlawful. The constitutional mandate contemplates only removal from the office held when the incumbent refuses to sign the waiver. Consequently, vacating the office, whether by resigning it or by accepting another City office, did not obstruct justice or the administration of the law; on the contrary, it accomplished the only purpose of the constitution by voluntary action. Agreement to take such action is not an indictable conspiracy. Nor was it unlawful for the Mayor to withhold exercise of his power of removal if he knew — as the indictment charges he did — that the office would be promptly vacated by Cassidy, as in fact it was.

What the defendants and their alleged co-conspirators agreed to do — and did do in this case — was no more obstructive of justice or the due administration of the law than an agreement that Cassidy should resign his old office and, having resigned, should be appointed to the new office. There could be nothing

corrupt in that; it was not even *malum prohibitum*, for by statute Cassidy could resign his office at any time (Public Officers Law, §§ 30, 31; *Olmsted* v. *Dennis et al.*, 77 N. Y. 378). This right to resign a public office may be exercised pending removal proceedings (*Roberts* v. *Paul, Judge*, 50 W. Va. 528; *The State ex rel. Sanders* v. *Blakemore*, 104 Mo. 340; *State ex rel.* v. *Dart*, 57 Minn. 261). The authorities are not in entire agreement as to the effect upon a removal proceeding of the incumbent's resignation. If the only purpose of the proceeding is to vacate the office, it has been held that the proceeding becomes moot upon the incumbent's resignation (*Roberts* v. *Paul, supra.* See, also, *State ex rel.* v. *Bush*, 141 Tenn. 229). But where any other relief is available to the relator, petitioner or plaintiff, it is usually held that the proceeding may be prosecuted to obtain such relief after the incumbent's resignation (*The People* v. *Loomis*, 8 Wend. 396; *The Queen* v. *Blizard*, L. R. 2 Q. B. 55; *People* v. *Rodgers*, 118 Cal. 393; *Hawkins* v. *Voisine*, 292 Mich. 357; *The People* v. *Hartwell*, 12 Mich 508; *State ex inf. McKittrick* v. *Wymore*, 345 Mo. 169. See, also, *The State* v. *Rose*, 74 Kan. 262; *Attorney-General [ex rel. Robinson]* v. *Johnson*, 63 N. H. 622). But here we are not concerned with these questions, for the suit brought by the Attorney-General appears to have been discontinued without objection on behalf of the People and we must assume that there was no reason for continuing it. If so, there was no obstruction of justice. But even if there was reason for its continuance, the defendants did nothing to prevent the judicial consideration and the determination of that question and the granting of additional relief if such relief was available.

The order of the Appellate Division should be reversed and that of the Special Term affirmed.

LEWIS, J. (dissenting). I find in the record evidence sufficient in law to warrant the indictment of the three appellants of a conspiracy to pervert or obstruct justice or the due administration of the laws (Penal Law, § 580). The test is statutory: "The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." (Code Crim. Pro., § 258.)

The accusatory statement in the indictment recites in detail the charge made against the appellants. In briefer statement the charge is that the appellants Harris — the acting Mayor of Albany, McGuiness — the Corporation Counsel, and Cassidy — formerly the Commissioner of Water and Water Supply, conspired to pervert and obstruct justice or the due administration of the laws by refusing to comply with the provisions of the State Constitution which required the removal from office of the appellant Cassidy who, when called before a grand jury to testify concerning the conduct of his office, refused to sign a waiver of immunity; and by corruptly and unlawfully bringing about the appointment of Cassidy to the office of Superintendent of Water Rent Delinquencies, thereby interfering with and impeding a pending action by which the Attorney-General sought a judgment requiring Cassidy to forfeit his office as Commissioner of Water and Water Supply.

The relevant provision of the State Constitution (art. I, § 6) is as follows: " * * * No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled in any criminal case to be a witness against himself, providing, that *any public officer who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties, refuses to sign a waiver of immunity* against subsequent criminal prosecution, or to answer any relevant question concerning such matters before such grand jury, *shall be removed from office by the appropriate authority or shall forfeit his office at the suit of the attorney-general.*" (Emphasis supplied.)

The minutes of evidence taken before the Grand Jury are available for the present record by reason of an order of Special Term permitting the appellants to inspect such minutes. From that source it appears that evidence of the following facts was brought before the Grand Jury:

On April 27, 1944, the appellant Cassidy held the public office of Commissioner of Water and Water Supply of the City of Albany. His annual salary was $5,000. On that date, when he was called before the Grand Jury to testify concerning the conduct of his office, he refused to sign a waiver of immunity after being informed that such refusal was a ground for his removal from office. On the same day the Attorney-General

sent to the appellant Harris as acting Mayor a written notice of the refusal by Cassidy to waive immunity. That notice contained the statement—" I wish to bring to your attention the provisions of Article I Section 6 of the State Constitution, which requires that in such cases such public official ' shall be removed from office by the appropriate authority.' " In that connection it should be said that Local Law No. 2, § 4 (1935) of the City of Albany provides that " The commissioner of water and water supply shall hold office during the pleasure of the mayor." The appellant Harris on April 28, 1944, advised the Attorney-General that he had referred the latter's communication relative to Cassidy to the Corporation Counsel — the appellant McGuiness. The appellant Harris as acting Mayor was at that time " the appropriate authority " under the constitutional provision to take action by which Cassidy could be " removed from office ". When he failed to take such action and in the absence of any further communication from him or from the appellant McGuiness, as Corporation Counsel, the Attorney-General set in motion the alternative method provided by the Constitution—" * * * at the suit of the attorney general "— to effect Cassidy's removal, and on May 2, 1944, caused to be served on Cassidy a summons and a complaint in an action to declare forfeited his office as Commissioner of Water and Water Supply. Twenty days thereafter — without further communication to the Attorney-General by the appellants Harris, and McGuiness — the appellant Cassidy caused to be served an answer, verified May 22, 1944, in which was pleaded his denial that he was then the Commissioner of the Department of Water and Water Supply of the City of Albany. Thereafter, upon that pleading, the Attorney-General's action to compel the forfeiture by Cassidy of his office as such Commissioner was dismissed at Special Term.

We come then to evidence which explains the change in official status experienced by the appellant Cassidy between April 27, 1944, when he appeared before the Grand Jury as Commissioner of Water and Water Supply, and May 22, 1944, when by his verified answer served in the Attorney-General's action he was able to state that he did not hold that office. There is proof that at a meeting of the Board of Estimate and Apportionment of the City of Albany on May 16, 1944, attended by the appel-

lant Harris, as acting Mayor and presiding officer, and the appellant McGuiness, as Corporation Counsel, Mr. McGuiness introduced the following resolution which was unanimously adopted:

" Resolved, that the position of Superintendent of Water Rent Delinquencies be, and the same is hereby created in the Department of Water and Water Supply, effective May 15, 1944, at an annual salary of Five Thousand Dollars ($5,000), and be it

" Further resolved, that the person appointed to the position shall under the direction of the Commissioner of Water and Water Supply, or his deputies, have the duty of compiling a list of delinquent water rents and rates, and formulate and execute means and method of collecting the same pursuant to the applicable provisions of law."

It also appears that on the date when the resolution quoted above was adopted there was in the office of Commissioner Cassidy a deputy commissioner to whom a local law gave authority, " in case of the absence * * * of the commissioner " that he, the deputy commissioner, should " discharge the duties of the office until the commissioner returns ". (Local Law, No. 2, § 5 [1935].) Another statute which the evidence shows was put to useful application was section 19 of the Second Class Cities Law, applicable to the City of Albany. That statute provides that " No person shall, at the same time, hold more than one city office. *Upon the acceptance by a city officer of a second office the office first held by him shall thereupon become vacant."* (Italics supplied.) On the afternoon of May 18, 1944, the appellant Cassidy went to New York City, absenting himself from his office for approximately twenty-four hours. Returning to Albany the following day (May 19, 1944) he appeared on May 20, 1944, before the appellant Harris and took the oath of office as Superintendent of Water Rent Delinquencies — the new position created on May 16, 1944, which entitled the incumbent to an annual salary of $5,000, the same as that of the Commissioner. The deputy Commissioner — exercising his statutory powers in the absence of the Commissioner — had appointed Cassidy, the Commissioner, to the newly created position during the latter's overnight " absence " in New York City. When, on May 20, 1944, Cassidy took the oath of office pertaining to

his new position, the office of Commissioner, of which he was the incumbent until that moment, "thereupon became vacant" under the statute.

It was thus made to appear by evidence before the Grand Jury that after receipt of formal notice from the Attorney-General that Cassidy, as a witness before the Grand Jury, had refused to sign a waiver of immunity, the appellant Harris — who, under the Constitution and applicable statutes was "the appropriate authority" to remove Cassidy from office — failed to take such action. Instead, in co-operative effort with the appellant Cassidy and the appellant McGuiness, who also had notice of Cassidy's conduct before the Grand Jury, the appellant Harris participated in a sequence of official acts which culminated in the transfer of Cassidy from the office he formerly held as Commissioner of Water and Water Supply to a position in the same department at the same salary. Indeed, the appellant Harris, in answer to questions addressed to him before the Grand Jury, admitted it to be " a fact " that the new position of Superintendent of Water Rent Delinquencies at $5,000 a year was created especially for the appellant Cassidy; he admitted it to be " a fact " that he (the appellant Harris) participated in the making of a " tailor-made job " for Cassidy; and finally he admitted that he participated in what the examiner termed " the subterfuge of keeping him [Cassidy] in the City employ at the same salary."

The failure by the appellant Harris to remove Cassidy — an official duty which he was enjoined by the Constitution to perform — was unlawful because such conduct was " not a compliance with the duty   *   *   *   expressly enjoined upon him by law." (*People ex rel. Childs* v. *Knott,* 187 App. Div. 604, 610, affd. 228 N. Y. 608.)

I cannot agree with the view expressed for a majority of the court as a basis for the decision about to be made that there is no evidence in the record that Cassidy was not qualified for the appointment to the new position of Superintendent of Water Rent Delinquencies. When he came before the Extraordinary Grand Jury in response to a subpœna, Cassidy had notice that the inquiry then being conducted by that body was directed to his conduct as Commissioner of the Department of Water and Water Supply, which public office he then held. This court

has recently had occasion to say that "Public officers are the servants of the People and the latter may say upon what terms they shall be engaged or continue in office after their engagement. * * * They [the People] have the power, by a constitution, to set *conditions,* with which there must be compliance, if one is to be or continue to be a public officer. Immunity may still be claimed. If claimed, one may not continue as a public officer." (Italics in original text.) (*Canteline* v. *McClellan,* 282 N. Y. 166, 170, 171.) I accept that pronouncement as descriptive of one of the means by which public policy in this State is formulated. "The power of grand juries to inquire into the wilful misconduct in office of public officers * * * " is a matter of fundamental public policy in this State. (N. Y. Const., art. I, § 6.) I regard the constitutional amendment of 1938 to be a further expression of that fundamental State policy, which the Grand Jury had the right to consider, that a public officer is to be deemed unfit for public service " * * * who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties, refuses to sign a waiver of immunity against subsequent criminal prosecution ". (N. Y. Const., art. I, § 6.)

Giving credence to the evidence before the Grand Jury, which stands unexplained and uncontradicted, I think it supports the conclusion that the appellant Harris evaded the performance of his constitutional duty to remove Cassidy from the public office he then held. In concert with the other two appellants he devised and aided in carrying out a plan to accomplish the vacatur of the office of Commissioner of Water and Water Supply without formally removing Cassidy therefrom and to continue him in public office, without interrupting his tenure in public service, by installing him in a new position in the same department created especially for him at the salary he had been receiving as Commissioner. Such concerted action by the three appellants was designed to and did thwart the constitutional mandate — which required the removal in good faith of Cassidy from the office he held on April 27, 1944 — and the action instituted by the Attorney-General as an alternative constitutional means to accomplish such removal. It was an obstruction of justice or of the due administration of the laws and was unlawful. "If the acts conspired for tend to obstruct

the due administration of the laws the statute [Penal Law, § 580] makes the conspiracy criminal whether the acts themselves are so or not." (*Drew* v. *Thaw*, 235 U. S. 432, 438; *People* v. *Sheldon et al.*, 139 N. Y. 251, 265-266.)

The evidence of conduct by the three appellants which brought about the change on May 20, 1944, in the official status of Cassidy, would be sufficient if unexplained or uncontradicted to warrant a conviction by a trial jury and is in law a sufficient basis for the indictment.

Accordingly I dissent and vote to affirm the order of the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, DESMOND and DYE, JJ., concur with THACHER, J.; LEWIS, J., dissents in opinion; CONWAY, J., taking no part.

Ordered accordingly.