The People of the State of New York, Plaintiff, *v.* Harry Bareika, Harry Bareika, Inc., Walter Motor Truck Company and Rand-MacMurray, Inc., Defendants.

Third Department, July 27, 1960.

*Bernard Tompkins, Special Assistant Attorney-General,* for plaintiff.

*De Graff, Foy, Conway & Holt-Harris* for Walter Motor Truck Company, defendant.

*Charles H. Stoll* for Rand-MacMurray, Inc., defendant.

*John E. Egan* for Harry Bareika, Inc., and Harry Bareika, defendants.

Herlihy, J. The testimony before the Grand Jury was spaced over a period of five and one-half months. At the conclusion of the final session, the Assistant Attorney-General moved for an indictment and thereafter, the foreman reported on behalf of the

Grand Jury a verdict in favor of an indictment in violation of section 580 of the Penal Law. The indictment was thereafter prepared and signed by the foreman but never examined, read to or by the members of the jury.

A brief chronology of the facts shows that in September, 1959, the Town Superintendent of Highways of the Town of Woodstock, Ulster County, New York, filed in the Town Clerk's office an inventory of town equipment and recommendations for the purchase of additional equipment, including a snowplow. Thereafter and at a meeting on December 22, 1959, after hearing the Superintendent, a resolution was adopted by the Town Board for standardization of equipment, materials and supplies, pursuant to subdivision 5 of section 103 of the General Municipal Law and authorized the Superintendent to advertise for bids for " one Walter four-wheel positive drive snow plow ". Subsequently and at a meeting of the board on January 30, 1959, the results of the bids were submitted to the board and it was voted that the Superintendent should purchase the equipment subject to the approval of the County Superintendent of Highways. The indictment concerns the three bids for this snowplow equipment.

Section 103 of the General Municipal Law governs advertising for bids and letting of contracts. Subdivision 5 relates to standardization of equipment for reasons of efficiency or economy and becomes effective upon the adoption of a resolution by a vote of at least two thirds of the governing body.

The Superintendent of the town when testifying before the Grand Jury stated that he requested three bids although the specifications were so drafted that Walter equipment alone could qualify and the board had voted pursuant to resolution to purchase only Walter equipment. The defendant Bareika was the exclusive distributor for Walter's in Ulster County and in order to meet the mandate of the Superintendent, he requested Walter Motor Truck Company, manufacturer of the equipment, and Rand-MacMurray, Inc., distributor in an adjacent territory, to submit bids. They were considered accommodation bids. The bid submitted by defendant Walter to the town contained a legend " cc Harry Bareika " which admittedly indicated a copy had been sent to Bareika. It further appears that the bid made by Rand-MacMurray was identical with the Walter bid except for the amount.

There was no testimony before the Grand Jury that the amount of the lowest bid was improper or failed to meet the specifications. The representative for Walter testified that the list price for the equipment was $20,476 and the dealer's commission was approximately 25%. The successful bid was

for $19,855. While it could be argued that any or all of the three bids might have been for a lower amount, it does not follow that it was intended by these bidders to conspire to do something unlawful or corrupt. The testimony adduced by the prosecutor that Walter had sold several pieces of equipment, at one bidding, to the State for a lesser amount is no fulcrum for the indictment. Among other facts, that was open bidding, not standardization, and no dealer commission was involved, it being a direct sale from the factory to the State. The witnesses for Walter and Rand-MacMurray before the Grand Jury admitted that the bids were at the request of and for the accommodation of Bareika but that does not imply there was any criminal rigging or collusion or effort on the part of defendants to conceal what they were doing. The testimony seems to slant in the other direction. Nor can such acts and conduct be considered as evidence of criminal intent by Walter or Rand-MacMurray, Inc., to commit unlawful, willful and corrupt acts constituting a conspiracy between them and Bareika. As to Bareika, it is apparent his intent and purpose was solely to satisfy and meet the requirements of the Town Superintendent.

These defendants were entitled to the presumption of innocence before the Grand Jury.

Section 251 of the Code of Criminal Procedure captioned '' Degree of evidence, to warrant an indictment '' provides: '' The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury.''

What the bidders — defendants — did in this case is not shown to obstruct justice or the due administration of the law, to wit, section 103 of the General Municipal Law as alleged in the indictment. The section did not require three bids but they were submitted at the direction of the Town Superintendent of Highways.

When we considered the matter before (9 A D 2d 1002, 1003) we stated: '' It requires more than an arrangement which will avoid the stated requirements of a law to make out a criminal conspiracy. It requires a corrupt arrangement, which in this case would mean an intent to deceive public officers in order to avoid the competitive requirement of the statute.''

The purpose of allowing examination of the Grand Jury minutes was to determine whether such corrupt intent existed.

In *People* v. *Harris* (294 N. Y. 424) where public officials joined together to effectuate the removal of an employee who had refused to testify before the Grand Jury and at the same

time created a new position in the same department, carrying the same salary, to which he was appointed, all of which the defendants admitted when testifying, the court said (p. 433): " The gist of the crime of conspiracy as defined in this statute is agreement to do an unlawful act either as a means or as an end (*People* v. *Flack et al.*, 125 N. Y. 324), and if the unlawful act is merely *malum prohibitum*, the agreement must have been entered into with criminal intent and evil purpose as distinguished from a purpose to do the act prohibited in ignorance of the prohibition ".

The testimony here shows that while possibly it was an error of judgment to submit accommodation bids at the request of Bareika, there was no showing of criminal intent or evil purpose, criminal in nature, in the sense that the defendants were trying to deceive the public officials but rather to meet the requirements of the Town Superintendent. Such conduct was not prohibited by section 103, the violation of which the indictment alleges as a basis for the conspiracy. Where the Grand Jury testimony shows a failure of proof as to any essential element of the crime charged, the indictment is dismissed. (*People* v. *Hattemer*, 4 A D 2d 775, affd. 4 N Y 2d 835.)

In our former decision (*supra*), we mentioned *People* v. *Willis* (158 N. Y. 392) as setting forth the governing rule as to conspiracy for the perversion or obstruction of justice. After examining the Grand Jury testimony we find there is great dissimilarity as to the facts in the respective cases. In *Willis*, the indictment charged that he (Willis) willfully neglected and omitted to perform his duties as Commissioner of City Works for corrupt purposes, as specified by enumeration of overt acts. The overt acts alleged in the indictment here considered disclose no evidence of corruption but merely that each defendant delivered to the Superintendent a purported bid on the equipment.

While we recognize (*People* v. *Flack*, 125 N. Y. 324, 333–334) that criminal intent is a jury question, we determine that the facts here — giving the People the most favorable interpretation — do not constitute the basis of a conspiracy as a matter of law. If presented to us on appeal after a judgment of conviction, premised solely on the Grand Jury testimony, we would reverse and dismiss (see Code Crim. Pro., § 251). We are satisfied that a prima facie case of guilt was not established in the proceedings before the Grand Jury. (*People* v. *Caminito*, 3 N Y 2d 596, 599.)

The defendants in a reply brief for the first time pose the question that subdivision 6 of section 580 of the Penal Law is unconstitutionally vague. In view of our decision to dismiss

the indictment, we do not pass upon this particular phase of the case. Indictment should be dismissed.

BERGAN, P. J., COON, GIBSON and REYNOLDS, JJ., concur.

Motion granted and indictment dismissed.