Fuchsberg, J.
(concurring). We are called upon to determine whether the Attorney-General, acting through a deputy appointed by him as Special Prosecutor by virtue of the authority vested by Executive Order No. 58 (9 NYCRR 1.58),[1] may prosecute an indictment obtained against a lawyer, who, while representing a defendant in a criminal case, is charged with having attempted, with the apparent aid of a law secretary to a Supreme Court Justice, to obtain a sum of money from his client by falsely representing that he could corruptly influence the outcome of the case.
The Appellate Division, Second Department, entertaining defendant’s motion pursuant to subdivision 2 of section 149 of the Judiciary Law,[2] "prohibited” the Special Prosecutor "from taking any further proceedings with respect to the * * * indictment” (58 AD2d 819).[3] Leave to appeal was granted to *260 the Special Prosecutor by a Judge of this court (42 NY2d 1094, 1097).
The threshold question is whether the Appellate Division’s order is appealable. Unlike Matter of Dondi v Jones (40 NY2d 8), where the Special Prosecutor was prohibited from proceeding under an indictment by means of an article 78 proceeding in the nature of prohibition,[4] the defendant here has moved in the pending criminal action.
In noncapital criminal cases, the right of appeal is strictly statutory (NY Const, art VI, § 3, subd b; Matter of Santangello v People, 38 NY2d 536); no appeal lies from any determination in such a case unless there is express statutory authority (Matter of Alphonso C., 38 NY2d 923; People v Reed, 276 NY 5, 10; People v Zerillo, 200 NY 443). But, while we are therefore powerless to fill a void in our appellate statutes (People v Gersewitz, 294 NY 163, 169; cf. People v Mackell, 40 NY2d 59), we are not confined to a "mechanical, literal” reading of the applicable statute (People v Brooks, 34 NY2d 475, 477-478; cf. New York State Bankers Assn. v Albright, 38 NY2d 430, 436-437).
Thus, although the literal language of the Criminal Procedure Law allows an appeal to this court from an order of the Appellate Division only if it was "entered upon an appeal taken to such intermediate appellate court” (CPL 450.90, subd 1), we have held that an order entered by the Appellate Division acting as a court of original instance under subdivision 2 of section 149 of the Judiciary Law is appealable to this court if it would have been appealable had it issued after an appeal to the Appellate Division (People v Di Falco, 44 NY2d 482, 485; People v Rinaldi, 34 NY2d 846; People v Hattemer, 3 NY2d 939). In so deciding, we were impelled by the dictates of history and logic to eschew a formalistic reading of the statute.
That history tells us that prior to 1953 a motion to dismiss an indictment returned at an Extraordinary Term of the Supreme Court could be brought before a regular term of that court anywhere in the State (see, e.g., People v Harris, 182 Misc 787, revd 268 App Div 731, revd 294 NY 424). The opportunity thus presented to engage in forum shopping to *261 obtain dilatory or other tactical advantage had apparently been abused to a point where the State Crime Commission and the Governor recommended the adoption of what was to become subdivision 2 of section 149 of the Executive Law (Third Report of New York State Crime Commission, NY Legis Doc, 1953, No. 68, p 14; NY Legis Ann, 1953, pp 479-480). Enacted at a special session of the Legislature, it provides that such a motion can be made only at either the Extraordinary Term or, at the option of the moving party, before the Appellate Division, by permission of a Justice thereof, in the department in which the Extraordinary Term has been convened (L 1953, ch 890).
Unquestionably, until then the People could appeal a dismissal of an indictment as of right to the Appellate Division and, upon that court’s affirmance, if leave were granted, could then appeal to this court (former Code Crim Pro, § 519); accordingly, the litigation did not necessarily terminate at the Appellate Division level. The Appellate Division was henceforth to replace the other terms as an alternative forum before which the motion could be returnable. That is the only change the amendment was to effect. Certainly, neither the report of the commission nor the Governor’s message gave the slightest hint that the new legislation they were sponsoring was intended to empower a defendant, simply by choosing to move in the first instance in the Appellate Division, to thereby deprive the People of their right to appeal. Such a reading would have confounded the purpose behind subdivision 2 by, counterproductively and unrelatedly, restricting the People’s recognized right of appeal when the announced design of the statutory change was to move in just the opposite direction — to eliminate a ready avenue by which defendants could too easily engage in maneuvers to frustrate the expeditious handling of special prosecutions.
Di Falco, Rinaldi and Hattemer, in resolving any possible outstanding doubt on this question, do not, however, completely dispose of the appealability issue. Each of these cases involved an order dismissing an indictment, from which appeal to an intermediate appellate court is directly authorized by CPL 450.20 (subd 1). In the case before us now, neither the relief sought nor that which was granted expressly included dismissal. Instead, what was explicitly demanded and obtained was an order barring the Special Prosecutor from proceeding. But, while the Criminal Procedure Law makes no provision *262 for appeal from an order precluding a particular prosecutor from acting under a specific indictment, since, in the present case, insofar as the Special Prosecutor is concerned it terminates the prosecution, for purposes of our jurisdiction we treat the disposition below as the functional equivalent of a dismissal of the indictment (cf. People v Coppa, 45 NY2d 244).
However, this is not to say from a substantive point of view, that, the relief granted by the Appellate Division was available by motion in the pending criminal action. It was not. Nothing in the Criminal Procedure Law authorizes a court to oust a prosecutor from conducting proceedings on a particular indictment. It follows that, if the Special Prosecutor lacks authority to appear before the Grand Jury, the only remedy available under the Criminal Procedure Law is dismissal of the indictment (see People v Di Falco, 44 NY2d 482, supra).
Furthermore, if an indictment is validly obtained, a subsequent conviction will not be reversed on appeal solely because a prosecutor improperly acted ultra vires in prosecuting the case (see People v Van Sickle, 13 NY2d 61; People v Kramer, 33 Misc 209, 220; cf. People v Citadel Mgt. Co., 78 Misc 2d 626, revd on other grounds 80 Misc 2d 668; contra, People v Vlasto, 78 Misc 2d 419). The only method by which such official may be disqualified ab initio is via an article 78 proceeding in the nature of prohibition, in which the issuance of a writ lies in the discretion of the court (Matter of Dondi v Jones, 40 NY2d 8, 15, supra).
In any event, even if the defendant had pursued one of the two indicated procedural paths open to him — a motion to dismiss or an article 78 proceeding — under the facts here his contention that the Special Prosecutor was without authority would be unavailing.
Defendant’s prosecution may be said to have had its genesis in an indictment of one Giovanni Reyes for the attempted murder of two women. Reyes, who had learned through his work as a registered informer for the Department of Investigation of the City of New York that a woman named Loretta Errico claimed to be in a position to influence the outcome of matters pending in that city’s criminal courts, successfully solicited her help. Errico then, in turn, enlisted the aid of Frank Giudice, law secretary to a Supreme Court Justice in Kings County, where the case was pending. In the course of carrying out their undertaking, Errico and Giudice recommended that Reyes retain the defendant as his lawyer. Before *263 this, however, first Reyes and later Errico, presumably to serve their own purposes, had agreed to co-operate clandestinely with the office of the Special Prosecutor in this affair. Subsequently, upon being confronted with electronic and wiretap evidence against him, the law secretary also decided to throw in his lot with the investigating forces.
The investigation originally led to an indictment charging the defendant and one of his law partners with conspiracy to commit bribery, attempted bribery and attempted grand larceny. That indictment was dismissed because of various irregularities, including, notedly, that the Special Prosecutor’s predecessor in office had failed to reveal to the Grand Jury that a key prosecutorial witness (the law secretary) had been granted immunity. Leave to represent the case to another Grand Jury was granted, and the new indictment with which we are now concerned followed. It alleges only the crime of attempted grand larceny and that solely against the defendant, with the unindicted law secretary named as a participant. The minutes of the Grand Jury reveal that, whatever representations the defendant and Giudice may have made to Reyes, there is no evidence that any attempt was in fact made to exert influence on court personnel in his behalf.
It is defendant’s position, therefore, that prosecution of the offense as currently charged is beyond the ambit of the Special Prosecutor’s authority. Defendant concedes that, at the outset, the investigation could reasonably have been expected to produce evidence bearing on specific acts of corruption in the criminal justice system. Nonetheless, he argues that, since the case as it has now emerged is not one in which he is accused of bribery or of any other specific act of corruption, but is essentially one for defrauding his client by falsely pretending that he could corruptly influence the attempted murder prosecution, the pendency of the client’s criminal case was no more than the occasion for the larceny. He further asserts that the role the law secretary played in the transacr tion was not qua law secretary, but was in the private capacity of intermediary between the defendant and Reyes. From all this, he would have us conclude that there was here no alleged act or omission "relating to or in any way connected with the * * * administration of criminal justice” (Executive Order No. 58, 9 NYCRR 1.58 [emphasis added]). We cannot agree with that analysis.
While a Special Prosecutor, acting pursuant to an order *264 issued under subdivision 2 of section 63 of the Executive Law may not operate beyond the grant of authority (Matter of Dondi v Jones, 40 NY2d 8, 19, supra), only a sterile reading of Order No. 58 would fail to place the new indictment within its parameters, both because of the way in which the defendant’s alleged scheme was implemented and because of the effect which, by its inherent nature, that scheme could be expected to have on the appearance of corruption in the administration of criminal justice (see Matter of Dondi v Jones, supra, p 16).
It is irrelevant that neither the law secretary nor the defendant engaged in a specifically determinable act of corruption. The false representation appears to have had an equally efficient potential for inducing payment. More important, in the context of this case, the mantle of the secretary’s office could not be so conveniently discarded as the defendant might wish. Indeed, it is to be doubted that the client, once guided to the secretary and then to the lawyer in order to have his case "fixed”, would have taken a disclaimer as more than mere pretense; the very fact that the courier who delivered the $50,000 in cash[5] which constituted the consideration for the alleged act of corruption held the position of secretary to a Justice of the Supreme Court had to lend an aura of credibility to the impressions and representations on which the client would rely. Less dramatic episodes also figured in the imagery; for instance, the defendant had the secretary keep him posted on the court’s schedule, not so much to help him "maneuver” the case as to have it appear that he could. In all, there were created permissible, if not compelling, inferences that the defendant assigned these tasks to the secretary because he perceived that the exploitation of Giudice’s official status would bolster the pretense of corruption.
More broadly, the permeating influence of conduct which undermines the appearance of the freedom from corruption which is so essential to a viable criminal justice system may indeed be more pernicious in its effect than would a discrete, and therefore perhaps confined, act of corruption itself. In institutions, as with men and women, a good name is the "immediate jewel of their souls” (Shakespeare, Othello, act III, scene 3, line 155).
For the reasons stated, the order of the Appellate Division should be reversed and the motion denied.
*265 Chief Judge Breitel and Judges Jones and Wachtler concur with Judge Gabrielli; Judge Fuchsberg concurs in a separate opinion in which Judges Jasen and Cooke concur.
Order reversed, etc.

.The Executive Order, in pertinent part, requires the Attorney-General by his assistants or deputies to attend before an Extraordinary Special and Trial Term of the Supreme Court in the County of Kings and its drawn Grand Juries,
"for the purpose of managing and conducting in said court and before said grand jury and said other grand juries any and all proceedings, examinations and inquiries and any and all criminal actions and proceedings which may be had or taken by or before said grand jury and grand juries concerning or relating to:
"(a) any and all corrupt acts and omissions by a public servant or former public servant occurring heretofore or hereafter in the County of Kings in violation of any provision of state or local law and arising out of, relating to or in any way connected with the enforcement of law or administration of criminal justice in the City of New York;
"(b) any and all acts and omissions and alleged acts and omissions by any person occurring heretofore or hereafter in the County of Kings in violation of any provision of state or local law and arising out of, relating to, or in any way connected with corrupt acts or omissions by a public servant or former public servant arising out of, relating to or in any way connected with the enforcement of law or administration of criminal justice in the City of New York”.

.Section 149 of the Judiciary Law authorizes the appointment of Extraordinary Special or Trial Terms by the Governor. Subdivision 2 provides: "A motion involving a matter pending before such extraordinary special or trial term shall be made returnable at such term, except that, in the exercise of discretion, a justice of the appellate division of the supreme court in the department in which such extraordinary special or trial term is being held may grant permission for such motion to be heard at a term of such appellate division.”

.The Appellate Division’s memorandum describes the motion as one to "prohibit the Special Prosecutor from conducting any further proceedings on this indictment or, alternatively, for dismissal of the indictment”. But the moving papers, aside from a broad request for omnibus relief, specifically ask merely that the Special Prosecutor be barred from further prosecution of the indictment.

. An article 78 proceeding, even though it seeks relief in relation to a criminal proceeding, is classified as civil. Appeals therein are governed by the broad provisions of CPLR 5601 and 5602. (See Cohen and Karger, Powers of the New York Court of Appeals, § 189, subd [d], p 711.)

. The record shows that the defendant told the secretary to keep $12,500 for himself.